**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2011[*]
Decided January 10, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-1582

| | |
|---|---|
| TIMOTHY JAY KAPRELIAN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 09-CV-609 |
| JAYN BOWERS, et al., *Defendants-Appellees*. | J. P. Stadtmueller, *Judge*. |

**O R D E R**

Laurie Kemp was held captive in her home, battered, and sexually assaulted by Timothy Kaprelian, her housemate of five years and former boyfriend. After Kemp's sister called and reported the crime to local police in Mt. Pleasant, Wisconsin, several officers went to Kemp's home. Kemp let them in, and the officers located Kaprelian asleep in a bedroom that doubled as a home office. Kaprelian was arrested, and the officers gathered potential evidence, including Kaprelian's collection of bondage-theme videos, magazines, and photographs. Kaprelian pleaded no contest to charges of false imprisonment and

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. *See* FED. R. APP. P. 34(a)(2)(C).

second-degree sexual assault and was sentenced to 50 years in prison. He filed this action under 42 U.S.C. § 1983 in June 2009, almost three years after his arrest, claiming that the defendant police officers violated his constitutional rights by seizing and reviewing his sexually oriented videos without a search warrant.

The defendants moved for summary judgment, arguing that no warrant was needed to seize Kaprelian's videos because Kemp gave consent and, moreover, the possibility that Kaprelian might destroy evidence justified dispensing with a search warrant. The defendants also contended that Kaprelian was foreclosed from contesting the legality of the seizure because he litigated and lost a motion to suppress in the state criminal case. In a statement of proposed facts supported by affidavits from Kemp and two police officers, *see* E.D. Wis. Civ. L. R. 56(b)(1)(C), the defendants gave their version of what happened at Kemp's residence. To dispute this account, Kaprelian was obligated to contest specific proposed facts and to support his objections with admissible evidence. *See id*. at 56(b)(2)(B). He did not; instead, he submitted a one-paragraph affidavit that says nothing relevant about the search conducted on the day of his arrest. The defendants' version is thus undisputed, and we draw the following facts from their account.

The police officers dispatched to investigate were met at the door by Kemp and allowed inside. She recounted that during the brutal attack, Kaprelian had restrained her with handcuffs and rope, hit her, shaved her head, cut off her clothing, and sexually assaulted her in various ways over a ten-hour period. Her wounds, bruises, and shaved head corroborated her story. In response to police questioning, Kemp explained that she had stopped dating Kaprelian more than a year before but they had remained friends and he was still living in the home, which was owned by her parents. None of the rooms were ever locked, and she had access to all areas at all times. Kaprelian slept in a bedroom that doubled as an office, and in that room were Kemp's computer, printer, and television, as well as the only land-line telephone in the house. Clothing belonging to both of them was in the closet, and her video camera was in a drawer of the dresser used by Kaprelian. Kemp was always free to enter the room, and she had access to everything inside.

Kemp led the police to Kaprelian and gave them permission to search the house for potential evidence. During the attack, Kaprelian had moved Kemp throughout the house, including the basement, and after he was in custody, the officers began collecting evidence. Kemp volunteered that Kaprelian had a collection of bondage-theme videos that had been displayed openly in the home until, at her request, he moved them into the office where guests would not see them. The police collected (among other things) Kemp's shorn hair, an eye blinder, handcuffs and various other means of restraint, cut-up clothing, computer equipment, a video camera, syringes and steroids, and a number of videotapes, DVDs, CDs,

magazines, and photographs. Some of the videos were bondage-related and others were unlabeled. A few days after the search, Kemp brought the police additional unlabeled videotapes she had found while moving the rest of Kaprelian's belongings out of her house.

Police later reviewed the videos at the station to see if they contained evidence of sexual assaults committed by Kaprelian. All of the videos were found to be lawfully possessed with two exceptions: One of the unlabeled videotapes, according to police and Kemp, depicts part of the sexual assault for which Karpelian had been arrested, and another depicts an earlier sexual assault committed and filmed while Kemp was unconscious. There also was a video of Kemp and Kaprelian engaged in a consensual sexual encounter involving bondage. Kaprelian has always maintained that all three videos depict consensual encounters that had occurred in the past.

Before he pleaded no contest to the criminal charges, Kaprelian moved for suppression of the evidence collected from the house. In denying that motion, the state trial judge relied on Kemp's consent to the search but also concluded that exigent circumstances justified the warrantless search.

In this lawsuit, Kaprelian limits his Fourth Amendment claim to the seizure of his sexually oriented videos. He argued in the district court that Kemp did not have actual or apparent authority to consent to the seizure of this property and that, regardless, she did not consent to such an extensive search and seizure. The district court entered summary judgment for the defendants, concluding that Kemp's undisputed consent and exigent circumstances justified the warrantless search. The court rejected the defendants' contention that the state court's adverse ruling on Kaprelian's motion to suppress precluded his § 1983 claim. The judge thought the state court's ruling might not be final and thus held that it did not have preclusive effect.

On appeal Kaprelian and the defendants again debate the questions of consent and exigent circumstances. The defendants also press their preclusion argument and dispute the district court's unexplained holding that the decision on Kaprelian's motion to suppress was not final. On the latter point, Kaprelian responds that the state court's denial of his motion should not be given preclusive effect because, in his view, a different question is at issue now: In state court he argued that the police officers should not have seized anything at all, and now he contends more narrowly that the officers violated the Fourth Amendment by seizing his collection of sexually oriented videos.

We start with the defendants' preclusion defense. In rejecting that defense, the district court expressed uncertainty about the finality of the adverse ruling on Kaprelian's

motion to suppress, perhaps believing that Kaprelian had an appeal from his convictions pending. In fact Kaprelian's appeal was resolved before the district court granted summary judgment in February 2011. *See State v. Kaprelian*, 2008 WL 4646900 (Wis. Ct. App. 2008), *pet. for review denied*, 794 N.W.2d 899 (Wis. Jan. 18, 2011). In any event, under Wisconsin law, which controls here, *see Allen v. McCurry*, 449 U.S. 90, 95–96 (1980), a pending appeal does not deprive a judgment of its preclusive effect, *Virnich v. Vorwald*, No. 10-3271, 2011 WL 6382532, at *8 (7th Cir. Dec. 20, 2011); *Town of Fulton v. Pomeroy*, 87 N.W. 831, 833 (1901) ("Even an appeal does not deprive a judgment of its effect as a bar to another action. It may be pleaded and relied upon pending such appeal with the same effect as if no appeal had been taken."); WISCONSIN PLEADING AND PRACTICE § 37:103 (5th ed. May 2011) ("It is the Wisconsin rule that an appeal from a judgment does not preclude that judgment from being a bar to another action.").

In Wisconsin the ruling on an issue raised and necessarily determined in a proceeding that ended in a valid judgment may be, but is not always, preclusive in later litigation. *Rille ex rel. Rille v. Physicians Ins. Co.*, 728 N.W.2d 693, 702 (Wis. 2007); *City of Sheboygan v. Nytsch*, 722 N.W.2d 626, 630–31 (Wis. Ct. App. 2006). Not always, because Wisconsin courts apply issue preclusion as a matter of equitable discretion even when the legal elements are met. *Rille*, 728 N.W.2d at 702–03. Judges look to a variety of factors in evaluating whether it would be fundamentally unfair to apply issue preclusion: whether the party opposing issue preclusion could have obtained review of the earlier adverse decision, whether the earlier proceeding was of significantly lower quality or scope, whether the parties' burdens have shifted since the earlier proceeding, and whether the party opposing preclusion lacked an adequate incentive or opportunity to litigate the issue fully in the earlier proceeding. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 594 N.W.2d 370, 375 (Wis. 1999); *Michelle T. ex rel. Sumpter v. Crozier*, 495 N.W.2d 327, 330–31 (Wis. 1993) (deriving factors from Restatement (Second) of Judgments § 28 (1982)).

In this case, the precise issue in question—whether the seizure of Kaprelian's videos violated the Fourth Amendment—was actually litigated and necessarily decided in the state criminal case. Kaprelian's motion to suppress challenged the seizure of *everything* that was taken from the house, explicitly mentioning all videos. The state judge heard argument from Kaprelian's attorney, and when the judge orally denied the motion, he found that the police officers had obtained Kemp's general consent to search the entire house and seize potential evidence. And there is nothing unfair about applying preclusion in this case. Kaprelian challenged the adverse suppression ruling on direct appeal, and there is no reason to suspect that the quality or extent of the Wisconsin suppression hearing fell below the threshold required to justify giving the ruling preclusive effect. Kaprelian had a strong

incentive to vigorously challenge the search in the criminal proceeding, and the burden of proof has not shifted in his favor.

The state court's adverse ruling on Kaprelian's motion to suppress precludes him from relitigating the constitutionality of the seizure of his videos. Accordingly, we need not reach Kaprelian's other arguments about consent and exigent circumstances.

AFFIRMED.