**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0342n.06**

Case No. 13-5769

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Apr 29, 2014 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| MARSHAWN LYTLE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE and SUTTON, Circuit Judges, and CLELAND, District Judge.[*]

CLELAND, District Judge. Marshawn Lytle pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924, for which he received a sentence of 120 months' imprisonment. Lytle challenges the district court's sentence as procedurally and substantively unreasonable. Because we conclude that the district court did not abuse its discretion, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

On July 14, 2005, officers from the Metropolitan Nashville Police Department (MNPD) were patrolling a local public housing facility. (PSR at 4.) The patrolling officers approached several individuals standing outside the housing complex and the individuals ran from them. (*Id.*) Officers observed one individual, later identified as Lytle, enter a vacant apartment and pursued him. (*Id.*)

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

MNPD Officer Daniel Alford, dressed in uniform, entered the apartment and announced his presence in a loud voice. (Dkt. # 190, Pg. ID 749; PSR at 4.) Before proceeding upstairs, he again announced: "Metro Police Department, if you are in here, come on down." (*Id.* at Pg. ID 750.) As Officer Alford entered an upstairs bedroom, Lytle, who was hiding in a closet, shot him in the chest, left arm, and stomach. (*Id*. at Pg. ID 752–53; PSR at 4.) Officer Alford returned fire and struck Lytle in his right arm. (PSR at 4.) Officer Alford continues to have a bullet lodged in his buttocks, and he has lost feeling in a portion of his stomach. (PSR at 5.) At the time of the arrest, officers found a partially loaded .40 caliber pistol on the floor near Lytle. (*Id.*) Officers also seized $1,400.00 in cash, 59 grams of marijuana, 8.7 grams of cocaine, and 0.3 grams of cocaine base. (*Id.*)

After he received hospital treatment, Lytle was released into state custody. (*Id.*) Lytle admitted that he had previously been convicted of a felony and confirmed that after he saw the police at the public housing facility, he ran into an abandoned building and fired the pistol at the officer. (*Id.*) Lytle added that he wanted the police to kill him, that he wanted to die, and that he was tired of life. (*Id.*) He also acknowledged that he possessed $1,400.00 in cash, marijuana, and cocaine, but denied possessing any cocaine base. (*Id.*) On August 17, 2005, the Tennessee Department of Corrections ("TDOC") transferred Lytle to federal custody pursuant to a writ of habeas corpus *ad prosequendum*. (Dkt. # 171, Pg. ID 647; PSR at 1.)

On August 31, 2005, a federal grand jury indicted Lytle for: 1) being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924; 2) possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1); and 3) using, carrying, and discharging a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). (Dkt. # 13, Pg. ID 18–19.) On July 21, 2006, the

district court granted Defendant's motion for a competency hearing, (Dkt. # 52, Pg. ID 218), and subsequently, on August 3, 2006, committed him to the custody of the Attorney General for psychiatric and psychological evaluation (Dkt. # 56, Pg. ID 224–25). Approximately six years later, after two evaluations and two competency hearings, the district court declared Lytle competent to stand trial. (Dkt. # 119, Pg. ID 350.)

On March 14, 2013, Lytle pleaded guilty to being a felon in possession of a firearm.[2] (Dkt. # 164, Pg. ID 549–53.) At the May 29, 2013, sentencing hearing, the district court rejected Lytle's objections to the Presentence Investigation Report ("PSR") and adopted the PSR's findings in full. (Dkt. # 186, Pg. ID 701.) The PSR first calculated Lytle's guidelines under U.S.S.G. § 2K2.1(a)–(b), which, after applying the appropriate enhancements, yielded an adjusted offense level of thirty-two. (PSR at 7.) However, as the PSR found, the cross-reference located in § 2K2.1(c)(1)(A) applied because Lytle used and possessed the firearm in connection with another offense, "at a minimum, attempted second-degree murder." (PSR at 6.) Pursuant to the cross-reference, the PSR then calculated Lytle's guidelines under § 2X1.1, which, after applying the appropriate enhancements, yielded an adjusted offense level of thirty-five. (PSR at 8.) Because the cross-reference resulted in a greater adjusted offense level, thirty-five, compared to thirty-two, guideline § 2X1.1 was the appropriate starting point. *See* § 2K2.1(c) ("If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, apply . . . § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other

---

[2] Although there was no plea agreement, the Government agreed to dismiss counts two and three after sentencing. (PSR at 15.)

offense, if the resulting offense level is greater than that determined above."). The PSR also recommended that, pursuant to § 3E1.1(a)–(b), Lytle should receive a three-level decrease for acceptance of responsibility. (PSR at 9.) Together, this produced a total offense level of thirty-two. (*Id.*) Finally, the PSR calculated Lytle's criminal history as category IV. (PSR at 12.) As a result, the advisory sentencing range for Lytle was 168 to 210 months' imprisonment. (PSR at 15.) However, because the statutory maximum for a violation of 18 U.S.C. § 922(g)(1) is 10 years' imprisonment, *see* § 924(a)(2), the advisory sentencing range became 120 months' imprisonment pursuant to U.S.S.G. § 5G1.1(a). (*Id.*)

The district court sentenced Lytle to 120 months' imprisonment, to be served consecutive to any state sentence, and three years' supervised release. (Dkt. # 185, Pg. ID 694, 696.) At the time of sentencing, as a result of the same conduct that gave rise to this case, Lytle also faced state charges for attempted first-degree murder, possession of cocaine for resale, and resisting arrest. (PSR at 12.) Further, at the time of the instant offense, Lytle was on probation for a 2003 state-court conviction for possession of cocaine with the intent to sell or deliver. (PSR at 11.) Following his July 14, 2005, arrest for the instant federal offense, on September 2, 2005, the state court revoked Lytle's probation and increased his sentence from eight years to twelve years' imprisonment. (PSR at 1,11.) Lytle's state sentence expired on January 17, 2014. (PSR at 11.) Therefore, from August 17, 2005, when the TDOC transferred Lytle to federal custody pursuant to a writ of habeas corpus *ad prosequendum,* until his May 29, 2013, sentencing, Lytle was in federal custody earning credit against his state sentence. (Dkt. # 171, Pg. ID 647; PSR at 1.) The judgment in the instant case states, "the Court recommends that the Defendant receive credit for any time served in federal

4

custody." (Dkt. # 185, Pg. ID 695.) Lytle filed a timely notice of appeal, and now challenges his sentence of 120 months' imprisonment as both procedurally and substantively unreasonable.

## II.  STANDARD OF REVIEW

We review a district court's sentence for procedural and substantive reasonableness for abuse of discretion. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

## III.  ANALYSIS

### A.  Procedural Reasonableness

Lytle argues that the district court improperly calculated his guidelines range because it relied upon clearly erroneous facts and failed to address the 18 U.S.C. § 3553(a) factors.

#### 1.  Calculation of the Guidelines Range

A procedural reasonableness review includes determining whether the district court properly calculated a defendant's guidelines range. *Seymour*, 739 F.3d at 929 (citation omitted). When calculating a sentence, judicial fact-finding is permitted so long as the facts are supported by a preponderance of the evidence. *United States v. Stafford*, 721 F.3d 380, 402 (6th Cir. 2013). "We review *de novo* a district court's application of the Sentencing Guidelines when that application involves mixed questions of law and fact . . . [and w]e review for clear error a district court's findings of fact in connection with the sentencing." *Id.* at 400 (alteration in original) (citation omitted). A factual finding is clearly erroneous when, after reviewing the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008) (citation omitted). Lytle argues that the district court improperly

applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) and a six-level enhancement under § 3A1.2(c)(1). We disagree.

   *a. Section 2K2.1(b)(6)(B)*

Assuming that Lytle is correct and the district court improperly applied a four-level enhancement under § 2K2.1(b)(6)(B), his guidelines range would have remained the same. The PSR first calculated Lytle's guidelines under § 2K2.1(a)–(b), and found that pursuant to § 2K2.1(a)(4)(A), Lytle's base offense level was twenty because he had already sustained a felony conviction for a controlled substance offense. (PSR at 6.) Next, the PSR applied a two-level increase because the firearm was stolen under § 2K2.1(b)(4)(A), a four-level increase because Lytle used the firearm in connection with another felony offense, "at a minimum . . . attempted second-degree murder," under § 2K2.1(b)(6)(B), and a six-level increase because Lytle assaulted a person during the course of the offense, knowing or having reasonable cause to believe that the person was a law enforcement officer under § 3A1.2(c)(1). (PSR at 7.) Together, this yielded an adjusted offense level of thirty-two. However, the PSR noted the cross reference located in § 2K2.1(c)(1)(A):

> If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply . . . § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above.

Because Lytle used and possessed the firearm in connection with another offense, "at a minimum, attempted second-degree murder," the PSR calculated his adjusted offense level under § 2X1.1 and found that it was thirty-five. (PSR at 8.) Accordingly, the PSR determined that § 2X1.1, not

6

§ 2K2.1(a)–(b), was the proper starting point. (PSR at 9.) If, as Lytle contends, the PSR, and the district court in adopting the PSR, improperly applied § 2K2.1(b)(6)(B), the adjusted offense level under § 2K2.1(a)–(b) would have been twenty-eight, as opposed to thirty-two. Therefore, § 2X1.1 would still have generated a greater adjusted offense level than § 2K2.1(a)–(b), and would have remained the appropriate guideline. Accordingly, even if Lytle is correct and the district court improperly applied a four-level enhancement under § 2K2.1(b)(6)(B), his advisory sentencing range would still have been 168 to 210 months' imprisonment.

*b. Section 3A1.2(c)(1)*

Under § 3A1.2(c)(1)—known as the official-victim enhancement—the district court adopted the PSR's recommendation and applied a six-level increase for assaulting a police officer in a manner that created a substantial risk of serious bodily injury. The official-victim enhancement under § 3A1.2 applies "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assault[s] such officer during the course of the offense." § 3A1.2(c)(1). Lytle argues that he did not *intend* to shoot the officer but instead intended suicide—he claims he wanted Officer Alford to kill him, an act sometimes referred to as "suicide by cop."

As Lytle argues in his brief, the official-victim enhancement requires only that the defendant acted recklessly, not intentionally. *United States v. Coleman*, 664 F.3d 1047, 1051 (6th Cir. 2012). In *Coleman*, we explained, "§ 3A1.2(c) requires only that the defendant's conduct 'creat[e] a substantial risk of serious bodily injury' to people that he knew or should have known were law enforcement officers. This phrasing evokes the common law definition of recklessness." *Id.*

7

(alteration in original) (citation omitted). Upon entering the apartment where Lytle was hiding, Officer Alford, dressed in uniform, announced his presence in a loud voice. (Dkt. # 190, Pg. ID 749; PSR at 4.) Before proceeding upstairs, he again announced: "Metro Police Department, if you are in here, come on down." (Dkt. # 190, Pg. ID. 750.) As he entered the bedroom where Lytle was hiding in a closet, Lytle shot Officer Alford at least three times, hitting him in the chest, stomach, and left arm. (Dkt. # 190, Pg. ID 752–54; Dkt. # 170-1, Pg. ID 576; PSR at 4.) The district court found "that while [Lytle] may have made statements about wanting to die . . . I don't think it carries by a preponderance of the evidence." (Dkt. # 190, Pg. ID 740.) The district court also observed that, "[t]he officer was shot in the areas of the body that are suggestive of an intentional shooting." (Dkt. # 190, Pg. ID 811.) Regardless of whether Lytle intended to shoot Officer Alford, and regardless of whether he actually hoped his shooting would provoke Officer Alford to return fire and end his life, it is indisputable that shooting a person multiple times creates a "a substantial risk of serious bodily injury." Similarly, given that Officer Alford was dressed in uniform and announced his presence twice, Lytle had "reasonable cause to believe" that he was shooting a law enforcement officer. Finally, we have approved a district court's rejection of just such a defendant's mitigating theory in a very similar situation. *See United States v. Ingle*, 460 F. App'x 593, 596 (6th Cir. 2012) (referring to these circumstances as "an act commonly referred to as 'suicide by cop'" and affirming trial court's determination that evidence of assaultive motive outweighed that of suicidal motivation). Here, the district court did not err when it found that Lytle acted with the requisite intent to support application of the official-victim enhancement.

We conclude that even if Lytle is correct and the district court improperly applied a four-level enhancement under § 2K2.1(b)(6)(B), his advisory sentencing range would still have been 168 to 210 months' imprisonment and the district court properly calculated Lytle's guidelines in applying a six-level enhancement under § 3A1.2(c)(1).

2. *Consideration of the 18 U.S.C. § 3553(a) Factors*

A sentence is procedurally unreasonable where the district court fails to consider the § 3553(a) factors. *Gall*, 552 U.S. at 51. Although a district court "need not engage in a 'ritualistic incantation' of the § 3553(a) factors, its reasoning must be 'sufficiently detailed to reflect the considerations listed in § 3553(a)' and to allow for meaningful appellate review." *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008) (quoting *Moon*, 513 F. 3d at 539). A district court is required to consider a defendant's non-frivolous argument that seeks a lower sentence. *See United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (citation omitted). Lytle contends that the district court intended for him to receive federal credit for the time he served in federal custody, but did not address the statutory hurdle contained in 18 U.S.C. § 3585(b). Under the statute, Lytle would only receive federal credit for the time he served in federal custody if he was not already receiving credit for the federal time against another sentence. 18 U.S.C. § 3585(b). And, in not addressing § 3585(b), Lytle argues that the district court failed to address his argument for a time-served sentence. Lytle's arguments lack merit.

Review of the district court record reveals that the district court recommended to the Bureau of Prisons ("BOP") that Lytle receive federal credit for the time he served in federal custody. Shortly after MNPD arrested Lytle, on August 17, 2005, the TDOC transferred him to federal

custody pursuant to a writ of habeas corpus *ad prosequendum.* (Dkt. # 171, Pg. ID 647; PSR at 1.)

Lytle remained in federal custody until his May 29, 2013, sentencing hearing—a span of

approximately 92 months. While in federal custody, he received credit against his state-court

conviction for possession of cocaine with the intent to sell or deliver, which was set to expire on

January 17, 2014. (PSR at 1, 11.) Although the district court did not cite § 3585(b) at sentencing,

the district court acknowledged Lytle's argument that he should receive federal credit for the time

he spent in federal custody, and explained:

> [T]he Court will recommend that you be given sentence credits for the time you were in actual federal custody. The Court record reflects that you were in custody, on August 17, 2005, and you were—but you were here—and there was a writ from the [TDOC]. But I'm uncertain as to all of the calculations, but in any event, that's a decision that the [BOP] will have to make the ultimate decision on.
>
> The court will recommend that you get credit for any time in which you were in federal custody under a federal order or a federal writ.

(*Id.*) The judgment also reflects the district court's recommendation, stating, "the Court

recommends that the Defendant receive credit for any time served in federal custody." (Dkt. # 185,

Pg. ID 695.)

The district court's recommendation to the BOP is consistent with § 3585(b), which permits

credit against a federal sentence only for time "that has not been credited against another sentence."

18 U.S.C. § 3585(b). However, only the BOP and the Attorney General, and not the district court,

are authorized to grant credit for time served under § 3585(b). *United States v. Crozier,* 259 F.3d

503, 520 (6th Cir. 2001) (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992)). Moreover, at

the time of sentencing in the instant federal case, Lytle's state-court sentence had yet to expire and

he was therefore continuing to receive credit against his state sentence. Time which has been credited towards service of a state sentence may not be "double counted" against a federal sentence. *See Nguyen v. Dep't of Justice*, 173 F.3d 429 (6th Cir. 1999) (unpublished table decision) (holding that time spent in federal custody pursuant to a writ of habeas corpus *ad prosequendum*, while serving a state sentence, cannot be applied to a federal sentence because the time has been credited to the state sentence); *see also Broadwater v. Sanders*, 59 F. App'x 112, 113–14 (6th Cir. 2003) ("Because Broadwater received credit toward his state sentence for the time period in question, he may not receive credit for this time toward his current federal sentence."). The district court correctly left the determination of whether Lytle was entitled to federal sentencing credits to the BOP.[1]

Recognizing that, in light of § 3585(b), the district court lacked power to give Lytle federal credit for the time he served in federal custody, Lytle proposed a time-served sentence to the district court. Because Lytle was receiving credit against his state sentence for his time in federal custody, granting his request for a time-served sentence would have allowed him to avoid any imprisonment for his federal conviction. The district court implicitly rejected Lytle's argument for a time-served sentence in its explanation of dual sovereignty:

> Now, the federal interest in this matter is that felons who possess firearms represent
> a danger to the community and pose the prospect for danger to the community.

---

[1] Lytle's argument in his reply that the 92 months he served in federal custody for his state sentence prevented him from receiving time reduction credits available under Tennessee law and from being paroled from his Tennessee sentence earlier does not impact our analysis. Lytle has no "constitutional or inherent right" to parole. *See Broadwater*, 59 F. App'x at 114 (quoting *Greenholtz v. Inmates of Neb. Penal and Corr. Complex,* 442 U.S. 1, 7 (1979)). Further, Lytle's argument is speculative because "eligibility to earn sentence credits does not equate with entitlement to sentence credits." *Id.* And we have previously held that Tennessee state law does not create a liberty interest in parole. *Wright v. Trammell*, 810 F.2d 589, 590–91 (6th Cir. 1987) (per curiam).

11

. . .

> The Court believes that the federal government has a distinct interest that's separate and apart from the state government, that has an interest in the drug convictions, violation of its probation laws, and also the state's interest in the attempted first [-] degree murder[2] charge of the officer. Those are interests that the state has. We are dual sovereigns. We have separate interests.

(Dkt. # 190, Pg. ID 811.) Upon imposing Lytle's sentence, the district court reiterated that "because there are separate policy concerns for the different sovereigns," Lytle's federal sentence of 120 months' imprisonment would be "consecutive to any state sentence." (*Id.* at Pg. ID 813.) In imposing a consecutive sentence, the district court rejected Lytle's argument for a time-served sentence.

Although the district court did not specifically cite § 3585(b), it is clear from the record that it considered Lytle's arguments and rejected them. The district court's "express sentencing rationale was logically responsive" to Lytle's arguments. *United States v. Chiolo*, 643 F.3d 177, 184 (6th Cir. 2011). Further, that rationale reflected the district court's consideration and rejection of those arguments, "making it unnecessary for the [district] court to expressly confirm this with magic words like 'I have considered [Lytle's] arguments and I reject them.'" *Id.* After reviewing the record, we are satisfied that the district court properly considered and rejected Lytle's arguments that he receive federal credit for the time he spent in federal custody and for a time-served sentence.

Accordingly, we conclude that Lytle's sentence is procedurally reasonable.

---

[2]The district court classified the potential attempted murder charge as first-degree whereas the PSR classified the potential attempted murder charge as "at a minimum, second-degree," (*see, e.g.* PSR at 6).

**B. Substantive Reasonableness**

Having determined that Lytle's sentence is procedurally reasonable, we will next consider its substantive reasonableness. "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). In our review, we "take into account the totality of the circumstances." *Gall*, 552 U.S. at 51. A sentence may be substantively unreasonable "if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (citation omitted). Sentences that fall within the properly calculated guidelines range are presumptively considered reasonable. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). This presumption applies to a statutory maximum sentence that falls below the advisory guidelines range. *See United States v. Henderson*, 393 F. App'x. 327, 333 (6th Cir. 2010). Lytle argues that his sentence is substantively unreasonable because the district court imposed a consecutive sentence, failed to consider Lytle's personal history, and placed undue weight on a letter Lytle wrote. Lytle also argues, generally, that the circumstances of his offense did not warrant the sentence imposed.

*1. Imposition of a Consecutive Sentence*

At the outset we note that, "[a] challenge to a district court's decision to impose a consecutive or concurrent sentence is not easily classified as 'substantive' or 'procedural' because an evaluation of the substantive reasonableness of a decision to impose a consecutive sentence

13

depends heavily upon an evaluation of the procedural reasonableness." *United States v. Albers*, 489

F. App'x 73, 77 (6th Cir. 2012) (citing *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009)).

As we concluded in the preceding section, the district court adequately explained its reasoning for

imposing a sentence "consecutive to any state sentence." (Dkt. # 190, Pg. ID 813.) As for

substantive reasonableness, Lytle argues that "any state sentence" refers to any future sentence the

state court might impose in the state prosecution "for attempted murder and a drug offense" arising

out of the same conduct that gave rise to this action. (Appellant Br. at 32.) This is not an accurate

depiction of the record.

A district court may not impose a federal sentence consecutive to a potential state sentence,

*United States v. Sutton*, 433 F. App'x 364, 365–66 (6th Cir. 2011), but it may take note of and

consider other pending charges against a defendant. *United States v. Alford*, 332 F. App'x. 275,

284–85 (6th Cir. 2009) (finding that the district court "did not err in considering the pending charges

while selecting a sentence within the advisory guideline[s] range."). At the time of sentencing, Lytle

was serving a state sentence for his conviction of possession of cocaine with the intent to sell or

deliver. (PSR at 11.) However, the district court noted the state government's interest in "drug

convictions, violation of its probation laws, and . . . in the attempted first[-]degree murder charge

of the officer." (Dkt. # 190, Pg. ID 811.) At the time of sentencing, the only state sentence that

Lytle was serving was for possession of cocaine with the intent to sell or deliver, and hence, it is the

only state sentence the district court could have been referring to when it imposed a sentence

"consecutive to any state sentence." We do not accept Lytle's reading of the record that by saying

"any state sentence" the district court meant any potential state sentence imposed in the future. It

is clear from the record that the district court imposed a sentence of 120 months' imprisonment, consecutive to Lytle's state sentence for possession of cocaine with the intent to sell or deliver.

### 2. *Lytle's Personal History and Letter*

Lytle contends that the district court did not sufficiently consider Lytle's personal history and that it placed undue weight on a letter in which Lytle "stated words to the effect of, I shot the pig, but he didn't die." (Dkt. # 190, Pg. ID 798.) The record demonstrates otherwise. At sentencing the district court stated:

> Well, the court has considered all of the factors under [§] 3553(a). The court has also considered all of the proof submitted, both through witnesses and through documents. I think this is a case in which it's—on the issue of sentencing, in which it's first important to remember the circumstances of the offense. Although there are references to the defendant's personal childhood history and his experience with depression, the facts of this case reveal that at the time of the offense, he was armed, he was dealing in drugs, multiple types of drugs . . . .
>
> . . .
>
> The court is not unmindful of his efforts at rehabilitation. But it is disturbing that he would refer to the officer, after all this legal history, refer to the officer as a pig. The court finds that disturbing.

(*Id*. at Pg. ID 810–12; *see also* Dkt. # 186, Pg. ID 703.) Our review of the sentencing hearing transcript reveals that the district court acknowledged Lytle's difficult past including his traumatic childhood and struggles with depression but also noted the severity of Lytle's conduct as well as his reference to the officer he shot as a "pig." We conclude that the district court neither failed to take into account Lytle's personal history, nor placed undue weight on Lytle's letter.

### 3. Circumstances of the Offense

Lytle argues that the circumstances of his offense did not warrant the sentence imposed. "A ten-year sentence," he argues, "is simply unreasonably long given the facts and circumstances of this case." (Appellant Br. at 36.) In support , he briefly discusses *United States v. Sanford*, 186 F. App'x 614 (6th Cir. 2006) and *Ingle*, 460 F. App'x 593—two unpublished cases with roughly similar facts, in each of which we affirmed sentences of less than 120 months' imprisonment. Lytle's argument, though, is unavailing. First, as the Government argues in its brief, the cited cases are factually distinguishable. Although in both *Sanford* and *Ingle* the defendant fired a gun in the direction of a police officer, the officers were not injured. In the present case, Officer Alford continues to have a bullet lodged in his buttocks, and he has lost feeling in a portion of his stomach. (PSR at 5.) Second, without reasoned explanation, these cases provide no more than anecdotal examples, and there is an ample supply of anecdotal counter-examples. *See, e.g.*, *United States v. Campbell*, 257 F. App'x 981 (6th Cir. 2007) (affirming sentence of 120 months' imprisonment after defendant pleaded guilty to being a felon in possession of a firearm where district court found that the firearm was "recently stolen"); *United States v. Olson*, 646 F.3d 569 (8th Cir. 2011) (affirming sentence of 120 months' imprisonment after defendant pleaded guilty to being a felon in possession of a firearm where his conduct during arrest "amounted to an assault on the arresting officers"); *United States v. Dougherty*, 321 F. App'x 762, 763 (10th Cir. 2009) (affirming a sentence of 120 months' imprisonment after a jury convicted defendant of being a felon in possession of a firearm where he pointed a gun at the officer pursuing him). Just as with *Sanford* and *Ingle*, these cases rest

on their own sets of facts; the sentence in each was justifiably determined to be within the range of reasonableness available to the sentencing court.

Most importantly, in reviewing a sentence for substantive reasonableness our role is not to substitute our discretion for that of the district court. *United States v. Oglesby*, 210 F. App'x 503, 510 (6th Cir. 2007). Even "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. Lytle points to no facts that explain, objectively, how his sentence is longer than necessary to effectuate the goals of § 3553(a). *Oglesby*, 210 F. App'x at 510 (citing *United States v. Yopp*, 453 F.3d 770, 774 (6th Cir. 2006)). He has therefore failed to persuade us that it is substantively unreasonable.

Indeed, it seems to us that a ten-year sentence for possessing a firearm with which a person intentionally shoots and injures a responding police officer, under circumstances such as these, is in no wise unreasonable.

## IV. CONCLUSION

We AFFIRM.