**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALFRED BALDERAMA-FEDERICO,

    Defendant - Appellant.

No. 01-1542
(D.C. No. 00-CR-305-D)
(D. Colorado)

**ORDER AND JUDGMENT***

Before **MURPHY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HARTZ**, Circuit Judge.

This is a search and seizure case. Alfred Balderama-Federico ("the defendant") was charged in a one count indictment with unlawfully possessing 75 kilograms of marijuana and four grams of a mixture containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(C), and 18 U.S.C. § 2. The defendant filed a pre-trial motion to suppress, which, after hearing, was denied. Thereafter, the defendant entered a conditional plea of guilty pursuant to Fed. R. Crim. P. 11(a)(2). The defendant was then sentenced to 42 months imprisonment, and three years of supervised

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

release. The defendant now appeals the district court's denial of his motion to suppress. Finding no reversible error, we affirm.

On July 5, 2000, at about 10:20 p.m. on I-25 just south of Pueblo, Colorado, Colorado State Patrol Trooper Steven Ortiz ("the trooper") stopped a car that was being driven by one Christine Haro and in which the defendant was the only passenger. At the suppression hearing, the trooper, who was the only witness, testified that he stopped the car because it was weaving over the center line of the highway. The trooper asked for, and received, Ms. Haro's Arizona driver's license and was advised by the defendant that the car belonged to him. The defendant began looking for the car registration and insurance documents and the trooper asked Ms. Haro to step out of the car. Having satisfied himself that Ms. Haro was not intoxicated, the trooper decided to only issue a warning. The trooper then approached the passenger side of the vehicle, where defendant was seated and the defendant gave him the car's registration and proof of insurance and also showed a Michigan driver's license. After verifying ownership of the vehicle, the trooper gave Ms. Haro her driver's license and the insurance and registration papers. As Ms. Haro walked back to her car, the trooper asked her if there were any weapons or drugs in the vehicle. She replied "No." The trooper then asked Ms. Haro if he could search the car and she stated "Yes." The trooper inquired as to whether the trunk of the car could be opened from inside the car or if a key had to be used. Ms. Haro said she didn't know, and she would have to ask the defendant, who, as indicated, owned the car.

- 2 -

The trooper next asked the defendant if he could search the car for weapons and drugs, and the defendant said "Yeah."[1] With no further conversation, the defendant got out of the car and proceeded to open the trunk, never removing his hand from the trunk lid. When the trunk lid was opened almost all the way and revealed some duffel bags located therein, the defendant said "See" and began to close the trunk by pushing down on the trunk lid. The trooper said "Wait," and pushed the lid back up, with no protest from the defendant. The trooper then unzipped one of the duffel bags and discovered marijuana. Both Ms. Haro and the defendant were then arrested, and following the arrest, 180 pounds of marijuana was discovered in the trunk, and four grams of heroin were found in Ms. Haro's purse.

The defendant and Ms. Haro were driven in a patrol car to a police station in Pueblo, Colorado, where they were given Miranda warnings, waived their rights and then made certain statements to the authorities, all of which resulted in the present indictment against the defendant. Specifically, the defendant admitted that he had purchased the marijuana in Arizona and was transporting it to Michigan to find a buyer. He also stated that he had purchased the heroin found in Ms. Haro's purse for his own personal use. The

---

[1]The trooper testified that he became "suspicious" about Ms. Haro and the defendant because there was a "very distinct" odor of air freshener inside the car and also because the back seat was packed with luggage, including 16 coat hangers of clothes, which he thought would ordinarily be stowed in the trunk. However, in this regard, under questioning by the court, the trooper admitted that his "suspicions were just not enough to detain them at that point" and that if the defendant had said, no, you can't search my vehicle "I would have let him go."

defendant said that Ms. Haro accompanied him on the trip because it "look[ed] better" but that Ms. Haro did not know anything about the marijuana in the trunk. The charges against Ms. Haro were eventually dismissed.

On appeal, the main issue is whether the district court erred in concluding that the defendant had <u>not</u> revoked his prior consent to search, or, at the least, had limited the scope of his prior consent, by his act of saying "See," and then beginning to close the trunk lid which he had opened. In this connection, counsel, in his brief, states that an individual's right to revoke his consent to search is just as protected by the Fourth Amendment as is the individual's right, in the first instance, to refuse, or limit, permission to search, and that our standard of review for deciding "whether consent was revoked is similar to determining the scope of the consent given," citing *Florida v. Jimeno*, 500 U.S. 248 (1991). We are in general accord therewith.

For the purposes of this particular argument, counsel concedes that the defendant verbally consented to a search of his car, including the trunk. It is counsel's position that the defendant revoked his consent, or at least limited the scope of his consent. On review of a district court's order denying a motion to suppress, we accept a district court's findings of fact unless "clearly erroneous," but our review of whether a particular search is "reasonable" under the Fourth Amendment is *de novo,* using an "objective reasonableness standard." *United States v. Flores,* 48 F.3d 467, 468 (10th Cir.

1995).[2]

At the suppression hearing, the trooper, under questioning by the court, testified that he "never took anything to think that he [the defendant] had revoked his consent." So, the trooper subjectively believed he acted reasonably in deciding that the defendant had not revoked, or limited, his previously given consent. However, as above indicated, the test is not "subjective reasonableness," but "objective reasonableness." Our *de novo* review of the record made at the suppression hearing leads us to conclude that the trooper possessed an "objectively reasonable" belief that the defendant had not revoked, or limited, his previously given consent to search his vehicle, including the trunk and the duffel bags located therein, and that the search was non-violative of the reasonableness requirement of the Fourth Amendment.

As already stated, the trooper was the only witness to testify at the suppression hearing, so it is not surprising that the "facts" in the instant case are not disputed. Our ultimate task in this case is to determine, *de novo,* whether under the undisputed facts the trooper's belief that the defendant had not revoked, or limited, his prior consent to search was an objectively reasonable belief. We hold that the trooper's belief, under the described circumstances, was an objectively reasonable belief.

What are the "facts" which, in our view, show that the trooper's belief that the

[2]"Objective reasonableness" means "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno,* 500 U.S. 248, 251 (1991).

defendant had not revoked, or limited, the scope of his previously given consent to search the entire car, which made the ensuing search of the duffel bags located in the trunk of the car reasonable, and not unreasonable, under the Fourth Amendment? They are: (1) the defendant verbally consented to a search of his vehicle, including the trunk and the contents thereof, and thereafter did not at any time verbally revoke, or limit, that consent; (2) after consenting, the defendant produced the key to the trunk of the car and did, himself, raise the trunk lid to an open position where the trooper could see the duffel bags; (3) at this juncture, the defendant simply said, "See," and, with his hand, according to the trooper, began to close the lid; (4) in response to the defendant's "See" statement, the trooper, who had not completed his search of the trunk, having only seen, and not examined, the duffel bags, responded: "Wait;" (5) thereafter the defendant stopped lowering the trunk lid, therefore this is not a case where a defendant actually closes the trunk lid and locks it;[3] and (6) the defendant did not verbally, or otherwise, contest or object to the trooper's request that he "wait."[4]

---

[3] In *Flores,* 48 F.3d at 468, the defendant "slammed the trunk closed." However, in that case we found it unnecessary to decide whether the closing of the trunk revoked prior consent to search the trunk, since we went on to hold that there was a "renewed subsequent consent." In *United States v. Ibarra,* 955 F.2d 1405, 1411 (10th Cir. 1992), in rejecting the government's theory of "continuing consent" on other grounds, we suggested, but did not hold, that the defendant may have revoked his initial consent by closing and locking the trunk.

[4] A defendant's failure to object to the search of a particular area of an automobile may be considered an indication that the search was within the scope of the consent. *United States v. Osage,* 235 F.3d 518, 519-20 (10th Cir. 2000).

Counsel alternatively argues that the trooper illegally detained the defendant after, and beyond, the purposes of the initial stop had been accomplished, thereby rendering the search of the trunk and duffel bags illegal. The district court rejected that argument, holding that further detention, if any, was consensual. We agree. A "traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." *United States v. West,* 219 F.3d 1171, 1176 (10th Cir. 2000).

Finally, counsel suggests that the defendant's post-arrest statements to the authorities were "tainted by his illegal detention and the unconstitutional search of the trunk of his car." Having now determined that there was no illegal detention nor any unconstitutional search of the defendant's vehicle, including the trunk thereof, the "fruit of the poisonous tree" argument is unavailing. There was no "poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 488 (1963).

Judgment affirmed.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge

**No. 01-1542,** *United States v. Balderama-Federico*

**MURPHY**, Circuit Judge, concurring


Under the law in this circuit, the scope of consent to search, like voluntariness, is a question of fact subject to review only for clear error. *See United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990).[1]  A revocation of consent is the ultimate limitation of the scope of that consent.  Because the scope of the consent is a factual question, any limitation of that consent, including revocation, is also necessarily a factual question subject to review for clear error.

Although included under the caption "Conclusions of Law," the district court's findings were that the scope of consent implicitly included the closed duffel bags in the trunk and that defendant's attempt to close the trunk lid was not a revocation of the consent previously given.  These findings are not clearly erroneous.

---

[1]At least one other circuit has held that the question of whether a search is within the scope of the consent is a question of law reviewed *de novo*. *See United States v. Rich*, 992 F.2d 502, 505 (5th Cir. 1993).  It is well-settled, however, that this court is "bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Burlington N. & Santa Fe Ry. v. Burton*, 270 F.3d 942, 944 (10th Cir. 2001) (quotation omitted).