IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL W. ROGERS, | § | |
| | § | |
| Plaintiff-Below, | § | No. 375, 2018 |
| Appellant, | § | |
| | § | |
| | § | Court Below: |
| v. | § | Superior Court |
| | § | of the State of Delaware |
| | § | |
| MATTHEW MORGAN et al., | § | |
| | § | Case No. N15C-07-259 |
| Defendants-Below, | § | |
| Appellees. | § | |

Submitted: February 6, 2019
Decided: April 2, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Stephen P. Norman, Esquire, The Norman Law Firm, Dagsboro, Delaware for Appellant.

Michael F. McTaggart, Esquire, Carla A.K. Jarosz, Esquire, Department of Justice, Wilmington, Delaware, for Appellees.

**VALIHURA**, Justice:

Michael Rogers appeals an order of the Superior Court granting summary judgment in favor of Defendants-Below, Corporal Matthew Morgan, the State of Delaware, and the Department of Public Safety Division of State Police, holding that Michael's invasion of privacy claims against them were barred by collateral estoppel.[1]  This case arises from an August 1, 2013, hit-and-run investigation that escalated into an officer-involved shooting. Corporal Morgan, a Delaware State Trooper, responded to a hit-and-run call and ran the license plate of the offending vehicle, which belonged to Michael.  Corporal Morgan then traveled to Michael's home, where Michael's elderly mother, Lorraine Rogers, answered the door.  Ms. Rogers, who lives with Michael, invited Corporal Morgan into the home as she went to wake Michael, who was heavily inebriated and asleep in his bedroom.  When Michael refused to step outside to investigate damage to his vehicle, Corporal Morgan gripped Michael's arm to lead him outside.  Michael immediately began fighting Corporal Morgan, who ended the fight by shooting Michael.[2]

The State then charged Michael with resisting arrest and several counts of assault. At the first criminal trial, Michael filed a motion to suppress evidence resulting from Corporal Morgan's entrance into the home, which Michael claimed was a warrantless

---

[1] To avoid confusion, this Opinion refers to Michael Rogers as "Michael" and to his mother, Lorraine Rogers, as "Ms. Rogers."  No disrespect or familiarity is intended.

[2] As the trial court recounted in the portion of its opinion addressing Michael's excessive force claims, the testimony of the various persons involved differs as to whether Michael charged at Corporal Morgan with a coffee table.  Accordingly, the trial court denied summary judgment as to that count given the disputed material issues of fact.  After a civil jury trial on Michael's remaining claims, including the excessive force claims, the jury found in favor of Corporal Morgan.  App. to Answering Br. at B25 (Verdict Sheet).

2

search without valid consent in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 6 of the Delaware Constitution. The court denied Michael's motion to suppress, finding that Ms. Rogers had invited Corporal Morgan into the home and that neither she nor Michael had revoked that consent. The jury was unable to reach a verdict, resulting in a mistrial. The State re-indicted Michael on counts of Assault Second Degree and Resisting Arrest. Michael pled *nolo contendere* to the Resisting Arrest charge, and the State dropped the assault charges. Michael's plea resulted in his conviction for one count of resisting arrest with force or violence. He was sentenced to a period of incarceration followed by probation.

On July 29, 2015, Michael filed this civil action in Superior Court alleging federal and state invasion of privacy claims, among other counts. Corporal Morgan moved for summary judgment on the grounds that collateral estoppel bars Michael's invasion of privacy claims, since the judge in the criminal trial had found that Corporal Morgan had permission to be in the home when the altercation ensued. The Superior Court granted Corporal Morgan's motion, and the jury later returned a verdict in his favor on the remaining claims.

Michael contends on appeal that collateral estoppel does not apply for four reasons: (1) the trial court only addressed the issue of Corporal Morgan's initial consent to be in the home, which is separate from the issue of whether Michael later revoked that consent; (2) the findings of fact regarding consent were not determined by a final judgment in the criminal trial because the gap between his trials moots the denial of his motion to suppress evidence in the first trial; (3) the findings of fact concerning consent are not essential to the

3

no-contest plea to resisting arrest; and (4) it is inequitable to apply collateral estoppel here in view of Corporal Morgan's allegedly inconsistent testimony in his civil trial deposition.

Corporal Morgan argues that the Superior Court's application of collateral estoppel was correct, but he also argues, in the alternative, that Michael has failed to establish a viable claim for invasion of privacy under federal or state law. Michael contends that Corporal Morgan did not fairly raise his alternative argument below, and that, in any event, it is incorrect.

We conclude that the Superior Court correctly held that collateral estoppel bars Michael's invasion of privacy claims. Therefore, we AFFIRM the Superior Court's November 9, 2017, decision.

*Background*

On the night of August 1, 2013, Corporal Morgan responded to a hit-and-run at the Riverside Bar & Grill. After speaking to witnesses on the scene and determining that the other vehicle in the accident belonged to Michael, Corporal Morgan traveled to Michael's residence in Georgetown. Around 10:03 p.m., Corporal Morgan knocked on the front door, and Ms. Rogers answered. Corporal Morgan informed her that he wanted to speak with Michael. Ms. Rogers replied that Michael was asleep in his room, but said she would wake him. Corporal Morgan alleges that Ms. Rogers then invited him into the house, which Michael and his mother deny. Corporal Morgan did not have a warrant. Ms. Rogers left the front door open when she walked to her son's room, and Corporal Morgan stepped inside.

4

After Ms. Rogers woke Michael, he emerged from his room wearing little clothing, so Corporal Morgan asked him to get dressed. Michael returned about a minute later fully clothed, smelling of alcohol, and appearing confused. Because of Michael's disheveled and confused state, Corporal Morgan asked Ms. Rogers if he had any mental problems. She said he did not. When Corporal Morgan told Michael that he was there to investigate a hit-and-run, Michael stated that he needed to get his insurance card from his bedroom, and told Corporal Morgan that the accident was a "private matter."[3] For his personal safety, Corporal Morgan followed Michael to his bedroom without Michael's express invitation.[4]

When they reached the bedroom, Michael began walking in circles and "talking gibberish."[5] Corporal Morgan asked Michael two or three times to go outside to finish the accident report, which Michael ignored or responded to by saying "no." Corporal Morgan then grabbed Michael by his left triceps to guide him outside. At that point, Michael threw Corporal Morgan onto the bed, where the two began hitting each other. Eventually Corporal Morgan separated himself from Michael and ran to the bedroom doorway, where he drew his Taser and ordered Michael to stop. When Michael charged at him, Corporal Morgan fired his Taser and missed. Corporal Morgan retreated toward the entrance of the house, at which point he alleges that Michael picked up a large coffee table and charged at him. Corporal Morgan shot Michael until he stopped advancing. Michael, however,

---

[3] App. to Opening Br. at A126–27, A133 (Corporal Morgan's Deposition).

[4] Due to the possibility that Michael was inebriated or unstable, Corporal Morgan testified that he "did not know if there was a weapon, a gun, [or] a knife." *Id.* at A339–40.

[5] *Id.* at A132.

alleges that he did not charge Corporal Morgan with the table, that Corporal Morgan shot at him when he was posing no threat, and that he only pulled the table over himself after Corporal Morgan finished firing.[6]

The State charged Michael with three counts of assault and one count of resisting arrest. In his initial criminal trial, Michael moved to suppress evidence resulting from Corporal Morgan's allegedly illegal presence in the home and bedroom. The trial court denied his motion because it found that Ms. Rogers had consented to Corporal Morgan's entering the house and that neither she nor Michael had revoked that consent. Michael's trial ended in a hung jury, but the State re-indicted him on charges of Assault Second Degree and Resisting Arrest. Michael pled *nolo contendere* to the resisting arrest charge, and the State dismissed the assault charge. He did not appeal any issue in the criminal proceedings.

On July 29, 2015, Michael filed this civil action in Superior Court for claims of invasion of privacy under the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, and under Delaware law. Michael asserts that during his deposition in the civil case, Corporal Morgan contradicted certain factual findings in the motion to suppress hearing concerning Corporal Morgan's permission to be

---

[6] The trial court found that "[Michael] threw Corporal Morgan on the bed, got on top of him, and began striking him," and that "Corporal Morgan fought back, and soon [Michael] and Corporal Morgan ended up on the floor," and also that, "[d]uring this physical altercation, [Michael] bit and placed Corporal Morgan in a headlock." *Rogers v. Morgan*, 2017 WL 5606861, at *4 (Del. Super. Nov. 9, 2017) [hereinafter *Summary Judgment Opinion*]. The trial court stated that these facts "are from the Plaintiff's criminal trial" and they "provide the most reliable rendition of the events that occurred on August 1, 2013." *Id.*

6

in the home. Michael argues that this inconsistency renders the collateral estoppel doctrine inapplicable.

On April 24, 2017, Corporal Morgan filed a Motion for Summary Judgment, arguing that collateral estoppel barred Michael's invasion of privacy claims. On November 9, 2017, the trial court held that collateral estoppel barred these claims because the parties had litigated "the exact same issue of consent," and "all the elements of collateral estoppel are present in this case . . . ."[7] After a five-day trial in July 2018, the jury found in favor of Corporal Morgan on all remaining counts. Michael filed his notice of appeal on July 20, 2018.

*Analysis*

We review a trial court's application of collateral estoppel *de novo*.[8]

The doctrine of collateral estoppel "precludes a party from relitigating a fact issue that has previously been litigated and decided in a prior action involving that party."[9] Generally, collateral estoppel applies to Section 1983 claims previously decided in state court proceedings.[10] "A claim will be collaterally estopped only if the same [factual] issue was presented in both cases, the issue was litigated and decided in the first suit, and the determination was essential to the prior judgment."[11] Michael argues that the factual issues

---

[7] *Id.* at *4.

[8] *See California State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824, 834 (Del. 2018).

[9] *Smith v. Guest*, 16 A.3d 920, 934 (Del. 2011) (citing *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 n.4 (Del. 1991)).

[10] *See Allen v. McCurry*, 449 U.S. 90, 104–05 (1980).

[11] *Smith*, 16 A.3d at 934 (internal citations and quotations omitted).

decided in the suppression hearing were different, that there was no final judgment, and that the findings were not essential to his no-contest plea. We agree with the Superior Court that collateral estoppel bars the issues of consent raised in the motion to suppress hearing.

A. *Were the Consent Issues in the Motion to Suppress Hearing Identical to the Issues in the Summary Judgment Stage in the Civil Trial?*

On appeal, Michael contends that at the suppression hearing in the criminal trial, the court determined only the initial factual question of whether Ms. Rogers consented to Corporal Morgan's entry into the home—not whether Michael later revoked that consent. He further argues that the court's discussion of his revocation of consent was "nonexistent." The Superior Court rejected Michael's argument in the civil trial, holding that Michael "presented the exact same issue of consent."[12]

Michael's assertion that the court's discussion of revocation was "nonexistent" is incorrect. The judge in the criminal trial was "satisfied that the officer was legally in the house, that he did not need a warrant, that he was invited in, and there was a voluntary, intelligent and knowing consent by [Ms. Rogers] in letting [Corporal Morgan] in."[13] But the court also addressed Michael's alleged revocation of consent, stating:

> I do not think [Corporal Morgan] has invaded any greater, or breached any greater right. The door is open. He did not shut the door on [Corporal Morgan]. There is nothing that says that at that point in time Mr. Rogers says leave my house, I don't want to talk to you or anything of that nature.[14]

---

[12] *Summary Judgment Opinion*, 2017 WL 5606861, at *4.

[13] App. to Opening Br. at A84 (March 13, 2014 Hearing).

[14] *Id.* at A85–86; *see also id.* at A83 ("I find that he was invited into the room, inferentially and directly.").

8

Based upon our review of the record, the court adequately considered the revocation issue in denying the motion to suppress.[15]

Michael also contends that, if Corporal Morgan's change in testimony regarding Michael's behavior had been presented to the court in the criminal trial, the judge would have reached the question of revocation and would have been required to reach a different conclusion. Michael relies on several portions of Corporal Morgan's civil deposition testimony. For example, in that deposition, Corporal Morgan testified as follows concerning the events immediately preceding the altercation:

> A [Corporal Morgan]: I believe I asked him two or three times, we have to go outside, I need to finish this accident report.
>
> Q: Okay.
>
> A: And he just kept ignoring me.
>
> Q: And he – he ignored you or did he say no?
>
> A: I believe, no.
>
> Q: He said, no –

---

[15] Other facts indicate that the court considered the issue of whether consent had been revoked. Michael raised the revocation issue in his motion to suppress, wherein he argued that Corporal Morgan entered his home and bedroom without his consent, and that "[e]ven if consent was initially provided by Defendant's mother, the consent was revoked when Defendant retreated to his bedroom and expressed a desire to end the contact with TFC Morgan." *Id.* at A78 (Mot. to Suppress); *see also id.* at A75, A79. Michael's counsel also questioned Corporal Morgan on the revocation issue during Corporal Morgan's testimony at the motion to suppress hearing. *See id.* at A358 (Morgan's Testimony) ("Q: Now, as [Michael] entered the bedroom, did he make any attempts to close the bedroom door? A: No."); *id.* at A359 ("Q: It's fair to say that he never gave you explicit permission to enter his bedroom, correct? A: That's fair to say, he didn't. . . . Q: And when he was speaking gibberish to you in the living room before he entered his bedroom, he never said to you anything like, follow me into my bedroom, right? A: Correct. Q: Is it your testimony that he never said anything to you like the following, 'Please leave,' at any point? A: Never said that.").

9

A: Yes.

Q: --I'm not going outside with you?

A: Yes.

Q: He affirmatively told you –

A: No.

Q: -- I'm ending this –

A: Uh-huh.
. . . .

Q: No. But when he went into his bedroom - - well, hold on. He did say, it's a private matter, this is a private matter?

A: Yes.

Q: So you understood he wanted to end the conversation.

A: Yes.

Q: That he wasn't consenting to continue talking –

A: Uh-huh.

Q: -- to you, right? You understood that?

A: Yes.

Q: All right. So you - - so you know he didn't consent to you being there?

A: Initially, no, but then he said he's getting his insurance card.

Q: Okay. But - - but when he told you he didn't want you there, you didn't leave?

A: No.
. . . .

10

Q: You continued – even though the consent had been revoked, you continued to push the issue –

A: Yes. [Objection by Corporal Morgan's counsel.[16]]

. . . .

Q: He says no. So, obviously he's trying to discontinue trying –

A: Uh-huh.

Q: - - to end the conversation again, right?

A: Uh-huh

Q: And you're in his private room?

A: (Indicating)

Q: So he doesn't want you - - he's - - he's made it clear to you that he doesn't want you in his private room, right?

A: I mean, he didn't say, get out, so no.[17]

Corporal Morgan's deposition testimony was consistent with his testimony in the criminal trial as to the key facts regarding consent: Michael declined Corporal Morgan's requests to move outside to discuss the accident, Michael did not expressly invite Corporal Morgan into his bedroom, and although Michael did not wish to go outside with Corporal Morgan, he never expressly asked Corporal Morgan to leave. Corporal Morgan's civil deposition testimony contains various interruptions, vague "uh-huh" responses, and counsel's compound questions. For example, even though Michael's counsel baked into a

---

[16] Corporal Morgan's counsel objected, stating, "I'm going to object to this continuing line about the consent had been revoked, because I don't believe he testified to that." *Id.* at A135.

[17] *Id.* at A132–35.

compound question the phrase, "even though the consent had been revoked," Corporal Morgan's "yes" response could simply have been a response to the portion of the question, "You continued . . . to push the issue." After an objection by Corporal Morgan's counsel challenging the compound aspect of that question, and four questions later, Corporal Morgan expressly testified that Michael never told him to get out of his room.

In its Summary Judgment Opinion, the Superior Court rejected Michael's argument that had Corporal Morgan's testimony from the civil deposition been presented in the criminal trial, the trial judge would have decided that consent had been revoked. The Superior Court reasoned that:

> Nothing has been discovered to suggest that Ms. Rogers clearly revoked her initial consent. Thus, Plaintiff has presented the exact same issue of consent. Plaintiff suggests he revoked Ms. Rogers' consent by telling Corporal Morgan "this is a private matter." However, the Court is not persuaded. The Court has previously found there to be valid consent when "an occupant who shares, or is reasonably believed to share, common authority over the property [provides consent], and no present co-tenant objects." Refusal or revocation of consent by a co-occupant must be clear and express. . . . In this case, Plaintiff did not expressly refuse or revoke consent. His statement of "this is a private matter" could suggest many things and it requires too large of an inferential gap to suggest it is a refusal or revocation of consent.[18]

We agree with the Superior Court's conclusion that if Michael had been attempting to revoke the consent that had been given to Corporal Morgan, he failed to do so in terms that were sufficiently clear to a reasonable officer.[19]

---

[18] *Summary Judgment Opinion*, 2017 WL 5606861, at *4.

[19] *See Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991) ("The touchstone of the Fourth Amendment is reasonableness. . . . The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—*what would the typical reasonable person have understood by the exchange between the officer and the suspect*?" (emphasis added) (internal citations omitted)); *United States v. Balderama-Federico*, 44 Fed. Appx. 407, 410 (10th

Based upon our review of the record before us, we agree with the Superior Court that the factual issues decided in the motion to suppress hearing were identical to the consent issues in the invasion of privacy claims, and that Michael "had a full opportunity to present all of the facts relevant to the consent issue at the Motion to Suppress hearing."[20] We further agree that Corporal Morgan's civil deposition testimony does not change that conclusion.

## B. Was there a Final Judgment for Collateral Estoppel Purposes?

Michael argued during the summary judgment proceedings that collateral estoppel does not apply because there was no final judgment concerning the court's consent findings in the criminal trial. The Superior Court rejected that argument, noting that "[i]t is true that other jurisdictions such as North Carolina and New Jersey have previously held that after a mistrial previous evidentiary rulings are erased, but Delaware has not done so."[21]

On March 13, 2014, the Superior Court conducted a hearing on Michael's motion to suppress. The trial court, after hearing testimony from Corporal Morgan, Detective

---

Cir. 2002) ("So, the trooper subjectively believed he acted reasonably in deciding that the defendant had not revoked, or limited, his previously given consent. However, . . . *the test is not 'subjective reasonableness,' but 'objective reasonableness.'*" (emphasis added)); *United States v. Buckingham*, 2006 WL 1174471, at \*5, \*6 (W.D. Tenn. Apr. 30, 2006) (stating that a citizen may retract his consent, but to do so effectively, "the individual must express the precise limits on or the absolute withdrawal of his consent in terms that are clear to a reasonable officer," and the "officers' subjective beliefs . . . are at most only slightly relevant to the objective reasonableness of their actions," and "regardless of these officers' beliefs, the question remains whether a reasonable police officer in similar factual circumstances necessarily would have understood [defendant's] initial refusal to sign the consent-to-search form as an absolute revocation of his previous oral consent").

[20] *Summary Judgment Opinion*, 2017 WL 5606861, at \*5.

[21] *Id.* (citation omitted).

13

Jonathan King, and Ms. Rogers, found that Corporal Morgan had obtained consent from Ms. Rogers to enter the residence, and that her consent had not been revoked by Michael. Based upon its findings, the court denied the motion. Michael did not appeal, his case proceeded as described above, and he ultimately pled *nolo contendere*.

In arguing that the Superior Court erred in its determination that there was a final, binding judgment, Michael contends that the factual issues addressed in the motion to suppress in the first trial were never determined by a valid and final judgment. He agrees that his plea in the second trial constitutes a valid and final judgment. But he asserts that although the motion to suppress was fully addressed in the hearing, and resulted in denial of that motion, the court's factual findings resulting from that hearing cannot be given collateral estoppel effect since the first proceeding ended in a mistrial. Relying on *Holmes v. City of Wilmington*,[22] he contends that evidentiary rulings in the first case, which ended in a mistrial, are of no force and effect. The trial court distinguished *Holmes* because following the mistrial there, the charges were dropped altogether, whereas here, Michael was re-indicted, pled *nolo contendere*, and was subsequently sentenced.[23]

Corporal Morgan, on the other hand, relies on *Hughes v. State*,[24] and argues that in a subsequent retrial, the trial court's prior rulings must stand unless they were clearly erroneous or there has been an important change in circumstances.[25] He contends that we

---

[22] 79 F. Supp. 3d 497 (D. Del. 2015).

[23] *Id.* at 504.

[24] 490 A.2d 1034 (Del. 1985).

[25] In *Hughes*, the defendant was convicted of first degree murder and appealed. This Court reversed and remanded for a new trial. He was again convicted and appealed. This Court

14

should apply the "law of the case" to the consent ruling in the first proceeding that ended in a mistrial. "The law of the case doctrine, like the *stare decisis* doctrine, is founded on the principle of stability and respect for court processes and precedent."[26] But because there was no intervening mistrial in *Hughes*, that case does not answer the question presented here, namely, whether an intervening mistrial renders the law of the case doctrine inapplicable and somehow "erases" the earlier rulings, as Michael contends.

In *Bailey v. State*,[27] however, we did suggest that the law of the case doctrine can apply in a situation involving a mistrial. We explained that "[i]n a subsequent retrial, the trial court's prior rulings must stand *unless* those rulings were *clearly in error* or there has been an important change in circumstance."[28] In that case, we held that the previous ruling did not bind the judge in the latter case because the previous ruling was erroneous and "[t]he law of the case principle recognizes the obligation of the trial court not to perpetuate clear error."[29] But as the Superior Court correctly recognized, we have not otherwise held that determinations in a proceeding ending in a mistrial are "erased." Accordingly, we reject Michael's contention that the findings regarding consent are of no force and effect as a result of the mistrial in the criminal proceeding.

---

remanded for an evidentiary hearing to determine whether the jurors had learned of certain extraneous prejudicial information. On remand, the trial court determined that the jury had been impartial. The defendant appealed. In reversing and remanding for a new trial, we held that rulings made by the trial court during the first trial and which were not challenged by the defendant during his first appeal were law of the case. *Id.* at 1048.

[26] *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000).

[27] 521 A.2d 1069 (Del. 1987).

[28] *Id.* at 1093 (citing *Hughes*, 490 A.2d at 1048).

[29] *Id.* at 1094.

15

Here, the second proceeding involved the same parties, the same factual basis, and two of the same charges. Michael acknowledges that a plea of *nolo contendere* is a valid and final judgment, and that he did not appeal that judgment.[30] Because he has not established a clear error or change in circumstances in the second proceeding, the "[r]ulings made by a trial court and not challenged on appeal become the law of the case."[31] Thus, we find no error in the trial court's determination that the consent findings resulted in a final judgment for collateral estoppel purposes.

*C. Were the Motion to Suppress Findings Essential to the Final Judgment?*

Michael argued at the summary judgment stage that collateral estoppel was inappropriate because the consent findings were not essential to his *nolo contendere* plea to resisting arrest. The Superior Court generally held that "all the elements of collateral estoppel are present in this case,"[32] but it did not address this issue specifically.

On appeal, Michael argues that even if the effect of the mistrial were ignored, and the suppression hearing were considered part of the second trial, the plea that ended the

---

[30] *See Kelly v. State*, 1987 WL 36202, at *1 (Del. Jan. 23, 1987) (TABLE) ("[A] [*nolo contendere*] plea is equivalent to a guilty plea and results in a conviction.") (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)); *United States v. Adedoyin*, 369 F.3d 337, 344 (3d. Cir. 2004) (stating that although "not an admission of guilt," a plea of *nolo contendere* is "admissible to prove the fact of conviction" and "has the same legal consequences as a plea of guilty and results in a conviction"); *see also Smith v. Susquehanna Univ.*, 701 Fed. Appx. 147, 150–51 (3d Cir. 2017) (observing that "while Smith correctly notes that a nolo plea is not an admission of guilt, we have held that such pleas are indisputably 'tantamount to a conviction,' and may be relied upon where the 'fact of conviction, not the plea, . . . [is] the operative fact,'" and that, "therefore, acceptance of Smith's nolo plea and his subsequent conviction rendered the denial of the suppression motion a final judgment entitled to preclusive effect" (quoting *United States v. Poellnitz*, 372 F.3d 562, 569 (3d Cir. 2004))).

[31] *Bailey*, 521 A.2d at 1093 (citing *Hughes*, 490 A.2d at 1048).

[32] *Summary Judgment Opinion*, 2017 WL 5606861, at *4.

16

second proceeding renders any factual issue reached in the earlier suppression hearing nonessential. Specifically, he argues that the resisting arrest statute does not distinguish between legal and illegal arrests.[33] Thus, he claims that he could be convicted of resisting arrest even if his arrest were illegal, so the issue of consent—which was the key issue in his motion to suppress—is not essential to his resisting arrest plea. He then reasons that because the legality of Corporal Morgan's consent was not relevant to the resisting arrest charge, the factual findings during the motion to suppress hearing were not essential to the final judgment.

Under the doctrine of collateral estoppel, "if a court has decided an issue of fact necessary to its judgment, that decision precludes relitigation of the issue in a suit on a different cause of action involving a party to the first case."[34] It does not appear that we have addressed this unique factual situation.

Corporal Morgan gives "essential" a broader meaning, arguing that had the trial judge granted the motion to suppress, there would have been no evidence remaining to support Michael's criminal charges. This interpretation has some support, as some federal courts have recognized that denials of motions to suppress can have preclusive effect, including "if it is clear the suppression of evidence would provide a complete defense to

---

[33] *See* 11 *Del. C.* § 1257(a); *see also Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 181 (Del. 2018) ("The Delaware Criminal Code 'gives no right to resist an arrest by a police officer, whether or not the arrest was lawful and whether or not the accused knew the arrester was a police officer.'" (quoting *Newman v. State*, 942 A.2d 588, 592 (Del. 2008))).

[34] *Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995) (citing *Allen*, 449 U.S. at 94).

17

the charges."[35]    Had the Superior Court granted the motion to suppress—thereby

eliminating the evidence of events that occurred in the home—the State would have no

evidence to support its case for resisting arrest.[36]    Although none of the authority cited by

the parties directly answers the question, *McDowell v. Delaware State Police*,[37] relied upon

---

[35] Also, as a general matter, federal courts have applied collateral estoppel to issues decided in a motion to suppress even where the final judgment is a no contest plea.  *See, e.g.*, *Manning v. Montgomery*, 2001 WL 1725371, at *6 (N.D. Ohio Oct. 31, 2001) (holding that denial of a motion to suppress based on unreasonable search and seizure was essential to the final judgment even though it was a no contest plea, and stating that "[t]o allow plaintiff to reargue before this court that the search of the vehicle and defendants' actions were unconstitutional would give him a second bite at the apple," and in considering whether the validity of the search was essential to the judgment, the court pointed out that the case itself is not what must be actually litigated, but rather, "[t]he constitutionality of the search, despite the no contest plea, [which] was litigated vigorously by plaintiff through appellate review [affirming denial of trial court's motion to suppress]"); *see also Brown v. Krokos*, 2015 WL 4040584, at *6 (M.D. Pa. July 1, 2015) (showing that collateral estoppel barred Section 1983 claims where defendant had pled guilty following denial of his suppression motion since the issue of the validity of the search in the federal action was "the same issue that was raised and actually litigated in connection with the suppression motion").  In contrast, in cases resulting in guilty pleas where the legality of the search was not litigated, collateral estoppel will not bar a subsequent Section 1983 action challenging the legality of the search.  *See Haring v. Prosise*, 462 U.S. 306, 316–17 (1983) (holding under Virginia law that a guilty plea entered in a state criminal proceeding would not bar a subsequent Section 1983 action where the issues to be determined in the latter case were neither actually litigated nor necessary to support the judgment entered in the prior proceeding"); *Linnen v. Armainis*, 991 F.2d 1102, 1105 (3d Cir. 1993) ("Although a successful suppression motion may have given Linnen a complete defense to the offenses with which he was charged, no issues pertinent to his § 1983 action were 'actually litigated' in the state criminal case because Linnen did not pursue his suppression motion in that proceeding.").  Here, the suppression motion was litigated and decided adversely to Michael in an adversary proceeding.

[36] *See Maxwell v. Coker*, 1990 U.S. Dist. LEXIS 17483, at *7 (S.D. Ala. Dec. 20, 1990) ("[T]he adverse determination of plaintiffs' motions to suppress cannot be treated as immaterial or incidental to the judgments entered on plaintiffs' pleas of guilty.  As a practical matter, and in a very real way, the adverse determinations of plaintiffs' motions to suppress were necessary to the judgments because absent such determinations plaintiffs would not have entered pleas of guilty [at all].  That is, the obvious causal relationship between the denial of the motions to suppress and the entry of guilty pleas renders the determinations on the motions sufficiently necessary to the judgments entered for collateral estoppel to be applied.").

[37] 1999 WL 151873 (D. Del. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000).

by Corporal Morgan, offers some support for his position. There, in federal court litigation, the plaintiff had claimed that the police defendants had violated his civil rights under Section 1983 when they searched his car without probable cause and had used excessive force in arresting him, among other claims. The plaintiff had pled guilty to several drug charges in the Pennsylvania Court of Common Pleas after the court denied his motion to suppress. Under Pennsylvania law, a guilty plea "is analogous to a conviction and, thus, constitutes a final judgment subject to appeal."[38] In the plaintiff's federal Section 1983 action, the defendants moved for summary judgment in the District of Delaware on a theory of collateral estoppel based upon the plaintiff's prior conviction in the state criminal proceeding. In holding that the claims were barred, the District Court observed that the plaintiff had pled guilty to drug charges after his motion to suppress was denied by the Court of Common Pleas. In reviewing the plaintiff's Fourth and Fifth Amendment claims, the federal district court then held that those claims "resulted in, and were essential to, the decision to deny plaintiff's motion to suppress."[39] As a result, the District of Delaware found that "the decision in the prior proceeding [on the motion to suppress] was essential to the judgment rendered."[40]

---

[38] *Id.* at *4 (noting, however, that "the only issues which can be heard on appeal following a plea are those relating to the legality of sentencing or validity of the plea"). The court observed that the plaintiff "had the opportunity to test finally in the state court the propriety of the suppression ruling, but chose to forego that right by entering a plea of guilty." *Id.*

[39] *Id.*

[40] *Id.*; *see also Kaprelian v. Bowers*, 460 F. Appx. 597, 600 (7th Cir. 2012) (state court suppression ruling in a case resolved by a no contest plea precluded Section 1983 suit on the same issue).

We conclude that the Superior Court's consent determinations in the motion to suppress hearing were essential to the denial of that motion and to Michael's *nolo contendere* plea in the same common-sense fashion, namely, that there is an obvious causal relationship between the denial of the motion to suppress and the no-contest plea, which renders the determinations on the motion to suppress sufficiently necessary for collateral estoppel to apply. In his motion to suppress, Michael had argued for suppression of all evidence from Corporal Morgan's entry into the residence or, alternatively, the entry into Michael's bedroom.[41] Because Michael's motion depended on whether Corporal Morgan had consent to enter the residence and the bedroom, consent was essential to the judgment. Based upon the record before us, it is clear that had the motion to suppress been granted, the evidence that formed the basis for Michael's resistance charge would have been excluded.

We recognize that Michael's argument—that technically and strictly speaking, the suppression decision may not have been necessary to the judgment of conviction—is a colorable one. But application of the doctrine to the unique facts presented here supports, rather than undercuts, the rationale for the doctrine. In Michael's criminal case, the consent issue was central and essential to the motion to suppress, and the issue received careful attention and was resolved after an adversarial hearing.

---

[41] App. to Opening Br. at A74 (Mot. to Suppress). *See also Susquehanna*, 701 Fed. Appx. at 151 n.15 (noting that the Court of Common Pleas had made it clear that the suppression motion turned on the "state action" issue, and thus, that court's resolution of the "state action" issue "was essential to its denial of the suppression motion"). Similarly, Michael's suppression motion turned on whether Corporal Morgan had valid consent. Thus, the consent issue was essential to the denial of the motion.

20

Finally, Corporal Morgan argues that even if collateral estoppel does not apply, Michael failed to establish a viable claim for invasion of privacy under federal or state law. Because we affirm the Superior Court's application of collateral estoppel, we do not consider the merits of this argument. We reject Michael's remaining arguments on appeal.

### *Conclusion*

For the foregoing reasons, we AFFIRM the Superior Court's November 9, 2017, opinion.