# Thompson, Appellant, *v.* Stone.

*Contracts—Cancellation—Sale—Evidence.*

1. Parties to a contract, so long as it is executory, may at any time rescind it either in whole or in part by mutual consent, and the surrender of their mutual rights is sufficient consideration; but there can be no cancellation unless the intention of the parties be clearly shown. This may be by express agreement to that effect, or it may be shown by the circumstances of the case. But it must be shown.

2. In an action for the breach of a contract to accept goods agreed to be bought on monthly deliveries, it appeared that both parties waived strict compliance with the terms of the contract except in respect to the times of deliveries. After the time specified in the contract for the last delivery had expired for a considerable period the parties met. One of the defendants testified that at this meeting he made the proposition that if the plaintiffs would extend the time to take the remaining goods and permit the defendants to take them as their business would allow them to do, they, the defendants, would pay for them the prevailing prices in the market at the time the goods were delivered, and that plaintiffs assented to this proposition. There was evidence, that subsequently to the alleged supplemental agreement the defendants wrote to the plaintiffs that they considered the contract as canceled, and that if the plaintiffs wished to continue to do business they would have to submit them new samples with prices. After some further correspondence the plaintiffs notified defendants that unless they took the remainder of the goods without further delay, they would sell them in the market and hold them for any loss. Subsequently the goods were sold, and suit was brought for the loss. The trial judge charged that if the defendants' version of the transaction was a correct one, it was conclusive of the question of cancellation. *Held*, that the instruction was erroneous inasmuch as such evidence was only to be taken into consideration with all that had gone before and came afterwards upon the question whether the contract was rescinded by mutual agreement of the parties.

Argued Oct. 13, 1909. Appeal, No. 155, Oct. T., 1909, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., June T., 1908, No. 2,005, on verdict for defendants in case of David F. Thompson et al., trading as Thompson, Son & Company, v. Pia Stone et al., trading as Stone Brothers & Company. Before RICE, P. J., HENDERSON,

Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Assumpsit to recover damages for breach of a contract for the sale of goods.  Before Audenried, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[On February 10, however, a meeting took place in the office of Thompson, Son & Company, in New York, between two of the partners of that concern, Mr. Thompson and Mr. Bryson, on one side, and one of the defendants on the other.   This particular defendant, Morris Stone, went to New York and called at the plaintiffs' office on the morning of that day, and referring to the correspondence which passed between them, said that they were not in a position to do as the plaintiffs requested the defendants to do, and take all the goods at once; that, in fact, he did not want to take any more goods unless the price could be reduced, that times were hard, he could not sell the output of his factory, he had been obliged to mark down the price of his goods, and that he wanted the plaintiffs to make a reduction in the price at which these goods were to be paid for.   They seem to have replied by requesting him to take the goods promptly. He said he could not do that.   Mr. Thompson then said that if he would take the goods within a reasonable time he could have them at the price of six and one-half cents a yard, although the original price fixed by the contract was seven and five-eighths cents per yard.   So far, Mr. Morris Stone and Mr. Thompson agree as to what was said between them.   They agree also in saying that Mr. Stone replied to Mr. Thompson that he would take the goods at that price, but he was unwilling to have the goods charged against him then, immediately.   He said he could not raise the money with which to pay the bill. The case, I think, turns on what transpired between these

men in the afternoon, when Mr. Morris Stone returned to the plaintiffs' place of business. According to the testimony of Mr. Stone, the plaintiffs, at his instance, modified their proposition of the morning, and said that they were willing to waive performance of the contract made between them and the defendants on May 15, 1907, and let the defendants take the goods just as the requirements. of their business made it convenient for them to do so, and charge the goods to the defendants at the market price prevailing at the time the goods were delivered. Now, Mr. Thompson says that no such arrangement was made between him and Mr. Stone.] [1]

[Mr. Bryson testifies to the talk between himself and Mr. Stone, which seems to indicate that the modification in these terms of the original contract between these parties, which had been agreed on, was not what Mr. Stone said it was. If what Mr. Stone says about this matter is correct, the plaintiffs' case fails. If you believe that on February 10, it was agreed between the plaintiffs and the defendants, acting by their partners who were present at this interview, that the plaintiffs would waive the exact performance by the defendants of the terms of their agreement of May 15, 1907, and that they would permit the defendants to call for the goods just as they needed them, and pay for them at the price prevailing in the market at the time the goods might be called for, as each lot of goods might be called for, then, under that view of the matter, the verdict in this case ought to be in favor of the defendants.] [2]

[If what Mr. Stone says about this matter is correct the plaintiffs' case fails.] [3]

[If the goods were sold, and sold at these prices, and these prices were the market prices, and in so selling them the plaintiffs acted as reasonable business men would act under the circumstances, and they had the right to sell them because of the default on the part of the defendants in taking the goods within a reasonable time after February 10, 1907, then I charge you that for the loss on the

goods, that is, the difference between the prices at which the goods sold and the price at which the defendants agreed to accept and pay for them, seven and five-eighths cents a yard, the defendants are responsible.] [4]

[The plaintiffs have asked that after this be awarded them you award them also, in addition to that, an allowance of six per cent on the original contract price of the eleven cases of cambric, amounting to $121.86, to cover insurance, expenses of handling, and compensation for efforts to make the sale. In my judgment the proofs do not entitle them, under any view of the case, to an allowance of that commission here. I instruct you that if your verdict is for the plaintiffs, it cannot exceed the sum of $753.88 with interest from May 15, 1908.] [5]

6. The learned court erred in his charge to the jury in instructing them as follows:

[If, however, you are of the opinion that the terms of this contract were so waived by Mr. Thompson and Mr. Stone when they met on February 10, 1908, at Mr. Thompson's office in New York, that the arrangement then left remaining open between the defendants and the plaintiffs was that the defendants would call for the goods just as the requirements of their business made desirable, and the plaintiffs would, when the goods were called for, deliver them and charge for them at the rate prevailing in the market at the time the cambric was delivered, your verdict ought to be in favor of the defendants and against the plaintiffs.] [6]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*J. Siegmund Levin*, for appellants.—The modification of the contract alleged by the defendants to have been made was void by reason of lack of mutuality and certainty: American Cotton Oil Co. v. Kirk, 68 Fed. Repr. 791; Crane v. Crane & Co., 105 Fed. Repr. 869; Cold

Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. Repr. 77; Teipel v. Meyer, 81 N. W. Repr. 982; Higbie v. Rust, 112 Ill. App. 218; Ames v. Pierson, 4 Pa. Dist. Rep. 392.

There was no consideration for the alleged modification of the contract: Moyer v. Kirby, 2 Pearson, 64; Strange v. Carrington, 116 Ill. App. 410; Weed v. Spears, 86 N. E. Repr. 10; Cannon v. Young, 5 Pa. Dist. Rep. 772; McNish v. Reynolds, 95 Pa. 483; Rumberger v. Golden, 99 Pa. 34; McIntyre v. Mining Co., 60 Pac. Repr. 552; Unruh v. Taylor, 43 Atl. Repr. 515; Willingham Sash & Door Co. v. Drew, 45 S. E. Repr. 237; Alaska Assn. v. Domenico, 117 Fed. Repr. 99; Zerr v. Klug, 121 Mo. App. 286.

The defendants having notified the plaintiffs that the contract was canceled, and the plaintiffs in consequence thereof, after due notice to the defendants having sold the balance of the goods for their account, the defendants were by reason of such notice precluded from setting up other reasons as a ground for their refusal to accept the goods: United Fruit Co. v. Bisese, 25 Pa. Superior Ct. 170.

*Julius C. Levi*, for appellees, cited: Flegal v. Hoover, 156 Pa. 276; Dreifus v. Salvage Co., 194 Pa. 475; McNish v. Reynolds, 95 Pa. 483; Malone v. Philadelphia & Reading R. R. Co., 157 Pa. 430.

OPINION BY RICE, P. J., July 20, 1910:

In this action of assumpsit the plaintiffs sought to recover damages for the breach of a certain contract made in May, 1907, whereby the plaintiffs agreed to deliver, and the defendants agreed to accept and pay for, twenty-five cases of cambric at the price of seven and five-eighths cents per yard. A memorandum of the terms of the contract was made by the plaintiffs and delivered to the defendants, by which it appears that the goods were to be delivered in the following September, October, November and December, and that the defendants were to have sixty days after delivery for payment and were

to be allowed a discount of two per cent, if payment was made within that time, and an additional discount of one per cent, if made within ten days. Before the end of December, 1907, the defendants had taken and paid for, at the contract price, eleven cases of the goods. The circumstances show that both parties waived strict compliance with the terms of the contract in respect to time, but up to February 10, 1908, both regarded it as binding upon them in all other respects. After that date the defendants ordered three more cases of cambric to be shipped to them. These orders were filled and the plaintiffs billed the goods at six and one-half cents per yard, on which basis they were paid for. About the middle of April the plaintiffs pressed the defendants to take the rest of the cambric called for by the contract. The latter replied that the contract of May 15, 1907, had been canceled and that they were under no obligation to take more goods. We shall refer to this later. After some correspondence on the subject the plaintiffs notified defendants that unless they took the remainder of the cambric without further delay they would sell it in the market and hold them for any loss that might result. Subsequently these goods were sold by the plaintiffs at prices which realized $753.88 less than they would have yielded at the contract price. Plaintiffs claim to recover this sum and a commission of six per cent for expenses of resale. The foregoing statement of undisputed facts is taken substantially from the opinion of the learned judge refusing a new trial.

The principal controversy arises out of what took place at a conference on the afternoon of February 10, 1908, between James Bryson, one of the plaintiffs, and Morris Stone, one of the defendants. The testimony on the subject was in conflict and the court submitted to the jury the determination of the question whether the version given by Bryson or that given by Stone was the correct one, but instructed them that if they found the latter to be correct their verdict should be for the defendants. It is important, therefore, to see what his version was. He says that he made the proposition that if the plaintiffs would extend the time to take the remaining cases of

cambric and permit the defendants to take them as their business would allow them to do they, the defendants, would pay for them the prevailing prices in the market at the time the goods were delivered, and that Bryson assented to this proposition. This is the substance of the defendants' testimony in chief upon this subject. We quote now from his cross-examination: "Q. There were fourteen cases, and when were you to take them? A. I agreed with Mr. Bryson to take them as soon as my business allowed me. Q. During what year, in what particular time? A. There was no time mentioned. Q. You were to take them just whenever you wanted? A. Yes, as the business allowed it. . . . Q. Who was to fix the date when the cases, when the rest of the goods were to be delivered? A. Nobody; the business conditions. Q. Whose business conditions? A. Of this country. Q. Whose business conditions? A. Mine." The appellants' counsel argues that such an agreement lacks the certainty, definiteness and mutuality which are necessary constituents of a legal obligation, and the authorities cited by him tend to support this proposition. The defendants seem to have taken the same position, for on April 18, 1908, they wrote to the plaintiffs as follows: "Yours of the 17th instant is at hand, and in reply to same beg to state that we have no goods on contract with you, the goods in question have been canceled some time ago. And if you wish to continue to do business with us you will have to submit new samples with prices." It was not until after suit was brought that the defendants took the position that the supplementary agreement of February 10, 1908, was in force and would be carried out by them. Speaking of the foregoing letter the learned judge, in his opinion refusing a new trial, says that it is not inconsistent with the defendants' testimony in the case, because the agreement of February 10, 1908, by reason of its lack of certainty, imposed no contractual obligation on the defendants. If that be true, and we are inclined to the opinion that it is the correct view, it is difficult to see how it could in and of itself be held as matter of law to have superseded the original contract. But it is argued that the case before us is one of cancellation by mutual releases

and hence it is immaterial whether or not the new agreement created an enforceable obligation. This assumes that there was a cancellation of the original agreement. That the parties to a contract, so long as it is executory, may at any time rescind it, either in whole or in part, by mutual consent, and that the surrender of their mutual rights is sufficient consideration, is well settled: Flegal v. Hoover, 156 Pa. 276; Reber v. Brownback, 27 Pa. Superior Ct. 471. But there can be no cancellation unless the intention of the parties be clearly shown. This may be by express agreement to that effect, or it may be shown by the circumstances of the case. But it must be shown. We assume that there may have been a cancellation of the original contract, although the agreement of February 10, 1908, did not create an enforceable obligation. The difficulty we find in the case is in concurring with the learned judge's instructions that, if the defendants' version of the transaction was the correct one, it was conclusive of the question of cancellation. In our view of the case it was evidence to be taken into consideration with all that had gone before and came afterwards upon the question whether the contract was rescinded by mutual agreement of the parties, but was not of itself conclusive upon that question. Therefore, the assignments of error, in so far as the instructions therein recited upon this subject are in conflict with this view, are sustained.

Upon the question of the right to recover commissions on a resale, the learned judge instructed the jury that the proofs were insufficient to sustain the claim, and in that conclusion we concur.

We have not gone into as full discussion of the case as might be warranted, because we think it is very clearly stated in the opinion of the learned judge refusing a new trial. We have endeavored to point out the reasons for our inability to agree with him as to the legal effect of the agreement entered into on February 10, 1908, assuming the defendants' version of what took place in the afternoon of that date to be correct.

The judgment is reversed and a venire facias de novo is awarded.