LOUIS JOSLOFF, d. b. a., *vs.* MAURICE FALBOURN, p. b. r.

1. CONTRACTS—ONE PARTY CANNOT MODIFY OR TERMINATE WITHOUT ASSENT OF OTHER PARTY.

   One party to a contract cannot modify or terminate it, unless other party assents.

2. CONTRACTS—MEETING OF MINDS ON TERMS OF NEW AGREEMENT ESSENTIAL TO MODIFICATION OR ABROGATION OF CONTRACT.

   To abrogate or modify contract it is necessary that minds of parties should meet by offer and acceptance on terms of new agreement.

3. CONTRACTS—INTENT OF PARTIES MUST BE CLEARLY SHOWN TO ESTABLISH CANCELLATION.

   Intent of parties must be clearly shown to establish cancellation of contract.

4. CONTRACTS—POSITIVE AND CONVINCING PROOF NECESSARY TO ESTABLISH RECISSION OF WRITTEN CONTRACT BY UNWRITTEN ONE.

   Though executory written contract may be rescinded by subsequent unwritten one, nothing short of positive and convincing proof will establish such recission against party denying it.

5. SALES—EVIDENCE HELD INSUFFICIENT TO ESTABLISH MODIFICATION OR RECISSION OF CONTRACT FOR PLATE GLASS.

   Evidence *held* insufficient to establish recission or modification of contract for purchase of plate glass of particular size, after purchaser, due to change in plans, had become unable to use size ordered.

(*January* 15, 1924.)

WOLCOTT, CHANCELLOR, PENNEWILL, C. J., RICE, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*Aaron Finger* for plaintiff in error.
*Philip L. Garrett* for defendant in ·error.

Supreme Court, January Term, 1924. Error to the Superior Court, New Castle County.

PENNEWILL, C. J., delivering the opinion of the Court:

On April 14, 1920, Maurice Falbourn, plaintiff below, purchased from Louis Josloff, defendant below, a certain quantity of plate glass for which he agreed to pay the sum of three hundred and ninety-five dollars, the delivery of the glass to be made when directed by Falbourn. At the time of making the contract Falbourn made a payment of one hundred dollars on account, and at the same time a memorandum of the agreement was reduced to writing and signed, by both parties. Subsequently, and before Falbourn was ready to have the glass delivered he so changed his plans that glass of a smaller size was required than that he contracted for. Falbourn testified that he went to Josloff and told him he could not use the glass he had ordered because his plans required a smaller size, and that Josloff said, "he would take care of that" (meaning that he would cut the glass to the required size). Falbourn further testified that Josloff refused to let him have the smaller glass at a less sum than the contract price, and also refused to return the one hundred dollars he had paid. Thereupon Falbourn bought the glass he needed from another party at a price less than that he had agreed to pay Josloff, and later brought suit in the Court below to recover the one hundred dollars he had paid.

The testimony of Josloff does not differ essentially from that of Falbourn in any material point. He testified that when Falbourn came to him and said he could not use the glass he ordered because a smaller size was required, he told him he would cut the glass to the required size and give him the pieces that were left. Josloff further testified that there was a drop of from twenty-five to thirty per cent. in the price of glass between the time when the contract was made and the time he was informed by Falbourn that he could not use the glass he had ordered, and also, that he had the glass in stock that was contracted for and was ready at any time to deliver it. This was denied by Falborn.

Josloff produced a witness (Samuel S. Wheatty) to corro-

32 Del.]      JOSLOFF, d. b. a., vs. FALBOURN, p. b. r.      435

Opinion.

borate his testimony that there was a decline in the price of glass after the contract between the parties was made, but the Court declined to admit the testimony.

At the close of the testimony the defendant below asked the Court to instruct the jury to return a verdict in favor of the defendant, which was refused.

It is claimed by the plaintiff in error that the Court below erred:

(1) In declining to instruct the jury to return a verdict in favor of the defendant, and,

(2) In refusing to admit the testimony of the witness Samuel S. Wheatty.

The case of the plaintiff in the Court below was based on the theory that the conduct of the parties subsequent to the making of the contract on April 14, 1920, showed that there was a cancellation or rescission of said contract.

[1, 2]  It is well settled, that one of the parties to a contract cannot modify such contract or terminate it lawfully unless the other party assents thereto.  To abrogate or modify a prior contract, it is necessary that the minds of the parties to the original contract should meet by offer and acceptance upon the terms of the new agreement.  Mere negotiations, consisting of unaccepted offers, cannot affect a prior contract.

To effect a rescission by subsequent mutual agreement, it is necessary that the agreement should receive the free and understanding consent of both parties to the original contract.  Just as in the making of a contract, so in the negotiation for its abrogation or termination, there must be a meeting of the minds of the parties in respect to the proposition that it shall be cancelled, and also in respect to any terms or conditions upon which the rescission is to be predicated, and it is inconsistent with such a mutual understanding if one of the parties expressly avers his willingness or desire to continue acting under the contract or to perform his part of it.  Black on Rescission and Cancellation, § 525.

[3]  There can be no cancellation of a contract unless it is clearly shown that such was the intention of both parties.

[4] While an executory written agreement may be rescinded by a subsequent unwritten one, it is well settled that nothing short of positive and convincing proof will suffice to establish the fact of such rescission against a party who denies it, and seeks to sustain it. *Thompson v. Stone*, 43 *Pa. Super. Ct.* 76; *Quinn v. Parke*, 9 *Wash.* 136, 37 *Pac.* 289.

In a very recent case in this State, the Court said:
"The evidence of this waiver or abandonment of the contract, we may say, must be clear, positive and above suspicion." *Deputy v. Hastings, Admr.*, 2 *W. W. Harr.* (32 *Del.*) 345, 123 *Atl.* 33.

[5] Tested by such law it is manifest there was no cancellation or rescission of the contract in question.

If the testimony of the defendant below is entirely disregarded, and only that of the plaintiff considered, it is clear there was no rescission. Whatever may have been the intention or desire of the plaintiff Falbourn, his testimony shows that Josloff not only declined to rescind or modify the contract, but expressed his readiness and desire to perform it. When informed by Falbourn that the glass he had ordered would be too large for use, Josloff said he would "take care of that," that is, cut the same glass down to the required size. It is upon that statement that Falbourn bases his claim that Josloff consented to a revision of the contract. The fact is, the answer indicates and clearly shows that Josloff intended to abide by the contract and furnish the glass that was contracted for. And such intention is made clear by the fact that Josloff refused to reduce the price of the glass or return the money Falbourn had paid him.

There is no evidence in the case that even tends to show a rescission of the contract, indeed, all the evidence shows the contrary. The Court are, therefore, of the opinion that the Court below should have instructed the jury to return a verdict in favor of the defendant, in as much as the plaintiff based his right to recover solely on the ground that there had been a cancellation or rescission of the contract he had made with the defendant.

In view of our decision on the question raised by the first

assignment of error, the second assignment becomes unimportant and need not be considered.

The judgment of the Court below will be reversed.