138 A.2d 810 (1958)
John J. SHEEHAN, Plaintiff,
v.
William J. HEPBURN, Defendant.
Court of Chancery of Delaware, New Castle.
February 20, 1958.
Robert C. O'Hora and David B. Coxe, Jr., Wilmington, for plaintiff.
Harold Leshem, Wilmington, for defendant.
MARVEL, Vice Chancellor.
In August 1956, plaintiff and defendant became acquainted through the offices of a mutual friend, Daniel A. Mealey, the funeral director. Thereupon the present litigants entered into discussions looking towards the possibility of working together in defendant's business of selling caskets. Plaintiff, while employed at the time in an executive sales position for a producer of steel products, was looking for an opening in another business with prospects, and defendant because of ill health was purportedly on the look-out for an associate to assist his as a full time partner in an expanding business.
Defendant at the time had for some five years been acting as a jobber of caskets for Soranton Steel Casket Company under an informal arrangement allegedly giving him the right to sell Soranton caskets throughout the eastern seaboard states from New York to Florida. While there were and are obviously others dealing in Soranton caskets in the same area (in fact defendant concedes that his so-called exclusive franchise is neither exclusive nor a franchise) nonetheless defendant's understanding with Soranton Steel Casket Company enabled him to job as many caskets *811 as he could sell on a liberal commission. Furthermore, defendant's business was subject to little overhead expense inasmuch as his office was located in his residence, and whereas other agents under formal contract to the manufacturer used their own trucks to obtain deliveries, defendant had deliveries made to him in the manufacturer's trucks. These arrangements, according to defendant, put him in a strong competitive position in the field.
Following their initial conversations, plaintiff examined defendant's records of gross sales and other records which should have given him some idea not only of the volume of defendant's business but also of his approximate net earnings and decided to enter the casket selling business as a commission agent under defendant's general direction. It was agreed that plaintiff at the outset would receive commissions on any casket sales made by him with the understanding that if an agreement on terms could be ultimately reached, the parties would share equally in the profits of a formal partnership or corporate enterprise. Having resigned from his then position, plaintiff proceeded to work on a commission basis during the months of September and October. Early in November the matter of arranging for an equal sharing in the casket selling business was again discussed, and defendant proposed that plaintiff pay $7,500 into the business in order to achieve a position of equality. Plaintiff accepted this proposition, prepared to advance $5,000 in cash and agreed to give defendant notes for the balance. A corporation known as Hepburn Casket Company, Inc. was organized into which the present parties each paid $500. Early in January 1957, Hepburn received 102 shares of the 200 shares of authorized stock of the corporation, plaintiff receiving the balance of the shares. Before this, however, plaintiff had paid $5,000 to defendant personally on November 29.
Commencing during the last few days of November, financial affairs of the business began to be operated under a corporate form. The Soranton Steel Casket Company agreed to job its caskets to the corporation rather than to Hepburn, and starting on December 14 the present litigants as corporate officers began to pay themselves equal salaries in the gross amount of $180 a week with the understanding that any balance of profits thereafter found to be distributable from corporate earnings were to be shared equally. Finally, on December 28 plaintiff delivered to defendant his personal notes in the total amount of $2,500.
Equal salaries continued to be paid to each of the present parties until early in February, when defendant proposed because of the alleged precarious cash position of the corporation that for the time being both parties confine their withdrawals of corporate funds to the taking of commissions on their respective sales, plaintiff's rate to be 13% to 15%, depending on the quality of the casket sold, and defendant's 15% and 18%. Defendant was to continue to furnish office facilities without charge at his home and to serve as general manager of the business. Apparently under the new proposal any net profits remaining after commissions had been paid were to be divided equally.
According to defendant, plaintiff, agreed to this new arrangement as a temporary expedient. Defendant points to the fact that following the new arrangements, plaintiff in fact accepted and cashed two commission checks, one for $186.09, dated February 8, 1957 and the other in the amount of $56.46 dated March 7, 1957. Plaintiff denies that he consented to such new arrangement, that he protested bitterly at the change in his status at several acrimonious meetings between the parties in the early part of February, and accepted the two commission checks in question under advice of counsel and because of his need for cash.
I find that plaintiff did not in fact agree to return to his former position *812 of mere salesman although he was willing to agree to cut his salary if defendant did likewise. I am also satisfied that defendant in effect sought to enforce new terms of indefinite duration on plaintiff, a change he could make effective as a practical matter as the majority stockholder of the corporation. Plaintiff refused to accept this ultimatum. Significantly, this suit was filed on February 20, 1957, indicating that on or before that date plaintiff had taken a firm position in the words of his complaint that "* * * the agreement of joint venture between plaintiff and defendant * * *" should be rescinded and that the parties should be placed in the positions they held prior to plaintiff's advancement of cash and delivery of notes.
In my opinion, it is unnecessary to consider the question of whether or not defendant prior to plaintiff's advancement of moneys and delivery of notes actually misrepresented material facts, because defendant in unilaterally seeking to alter the parties' contractual status in February 1957, committed a material breach of the contract sought to be rescinded.
An outright refusal of one party to a contract to perform the contract or its essentials constitutes such a repudiation as to entitle the other contracting party to treat the contract as rescinded, Vol. 12 Am.Jur., Contracts, § 442, p. 1024, and, as is generally held, an unjustified failure to perform basic terms of a contract warrants rescission rather than mere damages, Vol. 12, Am. Jur., Contracts, § 440, p. 1020.
While consideration of the right to rescind for a material breach and the related question of whether or not a rescission and modification have in fact been accomplished, has occurred in Delaware litigation for the most part in suits at law for damages, Johnson Forge Co. v. Leonard & Co., 3 Pennewill 342, 51 A. 305, 57 L.R.A. 225; Hartnett v. Baker, 4 Pennewill 431, 56 A. 672; Josloff v. Falbourn, 2 W.W.Harr. 433, 125 A. 349 because of plaintiff's prayer for the cancellation of his notes, I am satisfied that this is a case where the remedy at law would be at least in part inadequate. Having clear jurisdiction of one phase of the case, other issues will be disposed of in order to avoid a multiplicity of action.
I am satisfied that plaintiff properly treated his contract with defendant as having been repudiated. Plaintiff's investment in defendant's business was made for the purpose of gaining the right to share equally in corporate earnings over an indefinite period in the future, and plaintiff did not acquiesce in defendant's change in this arrangement. Plaintiff's sales could not have been expected to approach those of defendant's during the inception of the joint venture, and in any event having made the contract, defendant was not entitled to alter it without plaintiff's full consent.
Finally, I am satisfied that plaintiff had not prior to defendant's breach committed a breach of contract by allegedly not applying himself to his work as defendant charges. In my opinion, plaintiff at the time of defendant's breach was exerting his best effort.
Plaintiff is entitled to a decree restoring him to the status held by him prior to his investment, but as rescission necessarily operates ab initio both parties must be placed in statu quo ante. Counsel may confer with the Court as to how this may best be accomplished. In this connection consideration should be given to the question of whether a joining of Hepburn Casket Company, Inc. as a defendant is necessary in order to afford full relief.
After such conference and such further proceedings as may be necessary to accomplish rescission, an appropriate order will be entered.