IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID A. HANDLER, | § | |
| | § | No. 269, 2025 |
| Defendant-Counterclaim and Third- | § | |
| Party Plaintiff Below, Appellant, | § | Court Below—Court of Chancery |
| v. | § | of the State of Delaware |
| | § | |
| CENTERVIEW PARTNERS | § | C.A. No. 2022-0767 |
| HOLDINGS LP, | § | |
| | § | |
| Plaintiff-Counterclaim Defendant | § | |
| Below, Appellee, | § | |
| | § | |
| and | § | |
| | § | |
| CENTERVIEW PARTNERS | § | |
| ADVISORY HOLDINGS LLC, | § | |
| CENTERVIEW HOLDINGS | § | |
| GP LLC, ROBERT PRUZAN, | § | |
| and BLAIR EFFRON | § | |
| | § | |
| Third-Party Defendants | § | |
| Below, Appellees. | § | |

Submitted: January 7, 2026
Decided: March 18, 2026

Before **VALIHURA**, **TRAYNOR**, and **LEGROW** Justices.

Upon appeal from the Court of Chancery.  **REVERSED and REMANDED**.

Richard I.G. Jones Jr., Esquire, Harry W. Shenton, IV BERGER MCDERMOTT LLP, Wilmington, Delaware, James Adam George, Esquire, Brian T. Burns, Esquire, Paige Pauline Oostdyk, Esquire, Christopher J. Clark, Esquire (*argued*), Geoffrey Coll, Esquire, CLARK SMITH VILLAZOR LLP, New York, New York, *for Appellant*.

Michael A. Barlow, Esquire (*argued*), Hayden J. Driscoll, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, Delaware, *for Appellees*.

**VALIHURA**, Justice:

*INTRODUCTION*

This dispute centers around the nature of the work relationship between David Handler and an investment firm ("Centerview") and Handler's compensation rights arising out of that relationship. Although Handler was originally hired by the firm as an employee pursuant to an employment offer letter (the "2008 Letter"), Handler and Centerview subsequently negotiated changes to the relationship created by the 2008 Letter. The parties exchanged various proposals—including a proposed limited partnership agreement and a proposed addendum to the 2008 Letter. They then met to negotiate but walked away from that meeting with conflicting views of what had transpired. The parties addressed this disagreement in two separate actions. The issue presented in this appeal is whether the Court of Chancery properly held that claims brought in the second action were collaterally estopped by factual findings made by the court in resolving the first action.

In the first action, Handler claimed that the parties had entered into an oral partnership agreement and that he was therefore a partner in the entity that managed Centerview. In the second action, Centerview claimed that Handler was not, and had never been, a partner in that entity because the parties merely modified Handler's compensation as an employee. After the Court of Chancery's post-trial opinion (the "Standing Opinion") resolved the first action by concluding that the parties had not entered into an oral partnership agreement,[1] Handler amended his counterclaims in the second action to assert various claims based upon the 2008 Letter. In a motion to dismiss Handler's counterclaims,

---

[1] *Handler v. Centerview Partners Hldgs L.P.* (*Standing Opinion*), 2024 WL 1775269, at *13 (Del. Ch. Apr. 24, 2024).

3

Centerview argued that Handler was collaterally estopped from litigating five of his six counterclaims because they relied on allegations that directly conflicted with factual findings made in the first action.

The Court of Chancery agreed and dismissed Handler's counterclaims entirely holding that Counts One through Five were barred by collateral estoppel. The court stated that the factual premise underlying Counts Three, Four, and Five—"that the 2008 Letter continued to govern after the November 8 Meeting—directly contradict[ed] Vice Chancellor Glasscock's finding that the parties agreed to modify the 2008 Letter to change Handler's compensation structure."[2]

On appeal, Handler argues that the court erred in finding that Counts Three, Four, and Five were collaterally estopped because the Standing Opinion's conclusions regarding Handler's compensation were not essential to the judgment. We agree. The court's Standing Opinion is best read as merely commenting on what compensation Handler received as opposed to reaching a firm and final conclusion about the terms of his compensation. Further, Counts Three, Four, and Five concern Handler's rights as an employee, an issue that was not litigated and decided by a valid and final judgment in the first action. In fact, the court stated that the 2008 Letter "remained operative[]" and noted that "[a] companion substantive case, dependent in part upon the outcome here, will address Handler's rights after leaving the company."[3]

---

[2] *Centerview Partners Hldgs LP v. Handler* (*Collateral Estoppel Opinion*), 2025 WL 1720039, at *8 (Del. Ch. June 20, 2025).

[3] *See Standing Opinion*, 2024 WL 1775269, at *1 n.1, *5.

We **REVERSE** the Court of Chancery's determination that Counts Three, Four, and Five are barred by collateral estoppel because the elements for collateral estoppel were not established.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Handler's Centerview Employment Terms Are Established by the 2008 Letter

Centerview is an independent investment banking and advisory firm with a multi-layered entity structure.[4] Centerview Partners Holdings LP ("Topco") is the highest entity in Centerview's organizational structure.[5] Robert Pruzan and Blair Effron (the "Founders") are the only limited partners of Topco.[6] Topco manages Centerview Partners Advisory Holdings LLC ("CPAH"), which in turn, owns 99% of Centerview's investment banking operating company named Centerview Partners LLC ("CP LLC").[7] David Handler ("Handler"), David St. Jean ("St. Jean"), and an undisclosed third party joined Centerview as at-will employees of CP LLC on June 16, 2008, and agreed to the terms set forth in the 2008 Letter.[8] The 2008 Letter provided, among other things, that Handler and St. Jean would "earn 35% of revenues they generated up to $25 million, 40% of all revenues

---

[4] Corrected App. to Opening Br. On Appeal of Pl.-Countercl. Def. Below/Appellant at A282 [hereinafter "A__"] (Second Am. Answer and Verified Countercl. and Third-Party Claims [hereinafter the "Counterclaims"] at 43); *see also Standing Opinion*, 2024 WL 1775269, at *2.

[5] A283 (Counterclaims at 44); *see also Standing Opinion*, 2024 WL 1775269, at *2. "Topco was formed as a Delaware limited liability company on December 7, 2004 as 'Pruzan Holding LLC.'" *Standing Opinion*, 2024 WL 1775269, at *2. It was "converted into a Delaware limited partnership on November 19, 2013, with the current name 'Centerview Partners Holdings LP[.]'" *Id.*

[6] A283 (Counterclaims at 44); *see also Standing Opinion*, 2024 WL 1775269, at *2.

[7] A282–83 (Counterclaims at 43–44); *see also Standing Opinion*, 2024 WL 1775269, at *2.

[8] A286 (Counterclaims at 47); *see also Standing Opinion*, 2024 WL 1775269, at *2.

between $25 to $40 million, and 50% above the $40 million threshold[]" as well as a 6.5% "interest in the terminal value of Centerview upon a liquidity event[]" and a fixed share of the Centerview Partners Profit Pool after 2010.[9]

Beginning in 2010, Handler and the Founders attempted to renegotiate Handler's compensation.[10] The Founders shared a proposed limited partnership agreement ("LPA") with Handler and St. Jean under which Handler and St. Jean could become partners in Topco.[11] Handler "rejected the proposed LPA" and later shared a proposed addendum to the 2008 Letter (the "Addendum").[12] Handler and St. Jean met with the Founders at the University Club in New York on November 8, 2012 (the "November 8th Meeting") to conduct negotiations.[13] At the November 8th Meeting, the Founders presented a proposed term sheet, which "included a compensation change for Handler and St. Jean" and "described traditional partnership concepts, such as sharing in profits and losses in the Company."[14] Handler claimed that he left the November 8th Meeting believing that the parties had entered into an oral partnership agreement "while agreeing to revisit, in the context of a written partnership agreement, the other earlier terms Pruzan and Effron had

---

[9] A286–87 (Counterclaims at 47–48) (quoting *Standing Opinion*, 2024 WL 1775269, at *2); *see also Standing Opinion*, 2024 WL 1775269, at *2.

[10] A292 (Counterclaims at 53); *see also Standing Opinion*, 2024 WL 1775269, at *3.

[11] A295 (Counterclaims at 56); *see also Standing Opinion*, 2024 WL 1775269, at *3.

[12] A296–97 (Counterclaims at 57–58) (quoting *Standing Opinion*, 2024 WL 1775269, at *3); *see also Standing Opinion*, 2024 WL 1775269, at *3.

[13] A299, 301 (Counterclaims at 60, 62); *see also Standing Opinion*, 2024 WL 1775269, at *3.

[14] A299 (Counterclaims at 60); *see also Standing Opinion*, 2024 WL 1775269, at *3.

sought earlier but Handler had rejected."[15]  On November 19, 2013, the Founders executed a limited partnership agreement for Topco, which "did not include Handler and St. Jean as limited partners of Topco."[16]

After the November 8th Meeting, Handler received compensation inconsistent with the terms of the 2008 Letter.[17]  According to Handler, he "only accepted compensation beginning in 2012 that was inconsistent with the more lucrative terms of the 2008 Letter Agreement because he was misled by Pruzon and Effron to believe that they had reached an Oral Partnership Agreement[.]"[18]  However, on January 2, 2022, Handler emailed the Founders asserting that his compensation was 'well below what he was owed pursuant to any standard and the 2008 [employee] [L]etter [A]greement' under which [he] agreed to join the firm."[19]  On May 23, 2022, Handler served a books and records demand on Topco, CPAH, and CP LLC (the "Demand").[20]  Centerview rejected the Demand on the basis that Handler was not a partner in Topco.  On August 1, 2022, Handler initiated an action pursuant to 6 *Del. C.* § 17-305 to enforce the Demand (the "Books and Records Action") and resigned from Centerview.

Centerview filed this action (the "Plenary Action") on August 29, 2022, seeking a declaratory judgment that Handler "is not and never has been a partner (limited or

---

[15] A301 (Counterclaims at 62); *see also Standing Opinion*, 2024 WL 1775269, at *3.

[16] A303 (Counterclaims at 64); *see also Standing Opinion*, 2024 WL 1775269, at *5.

[17] A308 (Counterclaims at 69); *see also Collateral Estoppel Opinion*, 2025 WL 1720039, at *2.

[18] A305 (Counterclaims at 66); *see also Collateral Estoppel Opinion*, 2025 WL 1720039, at *2.

[19] A327 (Counterclaims at 88); *see also Standing Opinion*, 2024 WL 1775269, at *7.

[20] A329 (Counterclaims at 90); *see also Standing Opinion*, 2024 WL 1775269, at *7.

otherwise) of Topco and that he owns no equity in that entity."[21]  On October 4, Handler filed an Answer and Verified Counterclaims and Third-Party Claims, corrected on October 5, "asserting several counterclaims premised on the theory that Handler became a partner in Topco under an oral partnership agreement reached at the November 8 Meeting."[22]  On November 3, 2022, the Delaware Court of Chancery "stayed the Plenary Action and bifurcated the Books and Records Action to first determine the validity of Handler's assertion that he is a partner of Topco[]."[23]

B.      *The Court of Chancery Held That Handler Did Not Become a Partner of Topco*

Vice Chancellor Glasscock held a two-day trial to address the narrow standing issue in the Books and Records Action, which turned on whether Handler "was an employee of a Delaware L.P., or was in fact a partner in the entity that managed that L.P."[24]  Handler argued that the parties orally agreed to proceed with Handler and St. Jean as partners in Topco with some refinements and adjustment to the proposed term sheet's terms. Centerview argued that the parties agreed to a modification of the 2008 Letter which addressed Handler and St. Jean's compensation as employees, not as partners.

In the Standing Opinion, Vice Chancellor Glasscock ultimately found that Handler lacked standing because "Handler [] failed to show, by a preponderance of the evidence, that the parties reached an agreement under which Handler (and his fellow employee, non-

---

[21] A242–243 (Counterclaims at 3–4).

[22] *Collateral Estoppel Opinion*, 2025 WL 1720039, at *3.

[23] *Standing Opinion*, 2024 WL 1775269, at *7.

[24] *Id.* at *1.

party David St. Jean) became partners in Topco."[25] In reaching this determination, the court considered "whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that agreement concluded the negotiations . . ."[26]

Vice Chancellor Glasscock concluded that "the objective contemporaneous evidence demonstrate[d] that Handler and Centerview did not reach an agreement on the essential terms to create a partnership in Topco at the November 8th Meeting."[27] For example, the court found that emails exchanged in the weeks after the November 8th Meeting among the Founders, Handler, and St. Jean "strongly indicate[d] that neither Handler nor St. Jean considered that they had entered an oral partnership agreement."[28] The court noted that "several material terms were still up for discussion throughout the parties' years-long exchange of draft LPAs following the November 8th Meeting[]" and that the parties "did not perform in accordance with the terms identified in the purported oral

---

[25] *Id.* (noting that "[t]he parties' recollections of the crucial meeting are in conflict; the post-meeting correspondence between the founders and Handler and St. Jean, and between St. Jean and Handler themselves, supports a conclusion that no agreement was reached, and the abundant documentary evidence after the meeting is inconclusive[]").

[26] *Id.* at *9 (quoting *Sarissa Cap. Domestic Fund LP v. Innoviva, Inc.*, 2017 WL 6209597, at *21 (Del. Ch. Dec. 8, 2017)). The court also found that "Handler did not share in losses with Centerview and did not have governance rights, indicating that a partnership did not exist." *Id.* at *12.

[27] *Id.* at *10.

[28] *Id.*

9

partnership agreement."[29]  Further, the court found that Handler's "third-party communications evidence[d] that the partnership agreement was still under discussion, and not consummated."[30]

Thus, the court held that Handler was "not a partner of Topco and therefore not entitled to books and records under 6 *Del. C.* § 17-305."[31]  The court also concluded that "when Handler left his employment in 2022, he was an employee with certain vested rights in Centerview (to be determined in the Plenary Action)" and stated that "the Plenary Action[] should proceed."[32]  Handler did not appeal the Standing Opinion, and a final judgment was entered on June 12, 2024.[33]

C.      *The Court of Chancery Held That Handler's Counterclaims Were Barred By Collateral Estoppel*

On October 7, 2024, Handler filed a Second Amended Answer and Verified Counterclaims and Third-Party Claims (the "Counterclaims") asserting the following six counts:  (1) Count One alleged a claim for breach of fiduciary duty against all Defendants; (2) Count Two alleged a claim for constructive fraud against CPH LLP, GP LLC, and the Founders; (3) Count Three alleged a claim for breach of the 2008 Letter against CPAH; (4)

---

[29] *Id.* (observing that "Handler's compensation remained at the discretion of the Founders, and not the terms set forth in the purported oral partnership agreement[]").

[30] *Id.* at *11 (referencing "Handler's email to a third-party organization, of which Handler chairs the board of directors, expressing that he still had not entered partnership agreements with Centerview,[] and Handler's email to his accountant, stating that the partnership agreement had not been reached[]").

[31] *Id.* at *13.

[32] *Id.*

[33] *Handler v. Centerview Partners Hldgs L.P.*, 2024 WL 2999676, at *1 (Del. Ch. June 12, 2024) (ORDER).

Count Four alleged a claim for breach of the implied covenant of good faith and fair dealing against CPH LP, CPAH, and GP LLC; (5) Count Five alleged a claim for unjust enrichment against CPH LP, CPAH, and GP LLC; and (6) Count Six sought a declaratory judgment that Handler had been constructively terminated from Centerview without cause.[34] Defendants moved to dismiss the Counterclaims on October 21, 2024, and, following Vice Chancellor Glasscock's retirement, the Plenary Action was reassigned to another Vice Chancellor on January 8, 2025.[35]

In an opinion dated June 20, 2025 (the "Collateral Estoppel Opinion"), the Vice Chancellor held that Counts One through Five of the Counterclaims were barred by collateral estoppel. The court rejected Handler's arguments that the court's factual findings were not essential to the Standing Opinion's ruling and that the issue presented in the first action was not identical to the issues presented in his Counterclaims. The court determined that Counts One, Two, and Five all were premised on the allegation that Handler had been misled into believing that the parties had formed an oral partnership agreement at the November 8 Meeting and that this factual premise "directly contradict[ed] Vice Chancellor Glasscock's finding that *Handler did not believe that the parties had formed a partnership*."[36]

---

[34] *Collateral Estoppel Opinion*, 2025 WL 1720039, at *3–4; *see also* A330–43 (Counterclaims at 91–104).

[35] *Collateral Estoppel Opinion*, 2025 WL 1720039, at *4.

[36] *Id.* at *6–7 (emphasis in original).

11

The court further determined that Counts Three, Four, and Five were premised on the allegation that the 2008 Letter continued to govern Handler's compensation following the November 8th Meeting and that "Handler's attempt to enforce express or implied compensation terms under the 2008 Letter contradict[ed] the Court's ruling that the 2008 Letter was modified to make Handler's compensation discretionary."[37] The court declined to exercise subject matter jurisdiction over Count Six "where no other claims remain[ed]" and Count Six's "request for declaratory relief d[id] not support equity jurisdiction."[38] Thus, the court dismissed the Counterclaims in their entirety.

## II.    CONTENTIONS ON APPEAL

Handler raises three arguments on appeal. First, he argues that the court erroneously ignored both (1) Vice Chancellor Glasscock's statement that the "Plenary Action[] should proceed" to determine Handler's remaining "vested rights in Centerview" and (2) Vice Chancellor Glasscock's finding that the 2008 Letter "remained operative," thereby failing to draw all reasonable inferences in Handler's favor on a motion to dismiss.[39] Handler contends that the Court of Chancery improperly chose one factual inference in favor of Centerview over another conflicting reasonable inference.

Second, Handler argues that the court erred by declaring that nothing Vice Chancellor Glasscock wrote in his detailed factual findings was dicta. According to Handler, the court erroneously treated every statement in the Standing Opinion, including

---

[37] *Id.* at *8.

[38] *Id.* at *9.

[39] *Standing Opinion*, 2024 WL 1775269, at *5, *13.

12

the findings on compensation, as a finding essential to the narrow holding that Handler was not a partner. According to Handler, none of the court's statements regarding Handler's compensation following the November 8th Meeting were findings essential to the judgment of the Standing Opinion because none of them addressed the standing question of whether Handler met his burden to show that the parties entered into an oral partnership agreement.

Third, Handler argues that the court further erred in dismissing Count Five based upon certain statements in the Standing Opinion. Handler asserts that Vice Chancellor Glasscock's observation that the Founders had discretion to implement compensation principles flexibly cannot reasonably be understood to mean that any such flexibility gave Centerview a right to (1) pay Handler nothing in 2022 when he provided services that earned more than $60 million for Centerview or (2) seize $3.8 million of Handler's deferred compensation held in Handler's Priority Capital Account upon his departure from the firm.

Centerview responds that the Court of Chancery properly relied on the unambiguous holdings of the Partnership Opinion as barring Handler's claims in this case.[40] Second, Centerview argues that, "[u]nder Delaware law, a finding is essential to an opinion when 'there is an obvious causal relationship' between the finding and the judgment."[41] It asserts that the requisite relationship was present here. Alternatively, Centerview argues that, even under "Handler's improper outcome determinative test," the compensation findings were

---

[40] Answering Br. On Appeal of Pl.-Countercl. Def. Below/Appellee and Third-Party Defs. Below/Appellees at 5 [hereinafter "Answering Br."].

[41] *Id.* at 5–6 (quoting *Rogers v. Morgan*, 208 A.3d 342, 353 (Del. 2019)).

not "dicta" because those findings were outcome determinative in the Standing Opinion.[42] Third, based on the Standing Opinion's statement that Handler's compensation was discretionary, including Handler's 2022 bonus and receipt of deferred compensation, Centerview argues that it was permitted to not pay Handler these amounts at the end of any given year.

## III.   STANDARD OF REVIEW

"This Court reviews a trial court's grant of a motion to dismiss *de novo*."[43]  "When reviewing a ruling on a motion to dismiss, we (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[44]  "We review a trial court's application of collateral estoppel *de novo*."[45]

## IV.   ANALYSIS

"Collateral estoppel prohibits a party from relitigating a factual issue that was adjudicated previously."[46]  "The test for applying the collateral estoppel doctrine requires

[42] *Id*. at 6.

[43] *RBC Cap. Markets, LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 639 (Del. 2014).

[44] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011)).

[45] *Rogers*, 208 A.3d at 346.

[46] *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999); *see also Rogers*, 208 A.3d at 346 ("The doctrine of collateral estoppel 'precludes a party from relitigating a fact issue

that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment."[47] The Court of Chancery determined that Counts Three, Four, and Five were barred under the doctrine of collateral estoppel because "[t]he factual premise underlying each of these counts—that the 2008 Letter continued to govern after the November 8 Meeting—directly contradicts Vice Chancellor Glasscock's finding that the parties agreed to modify the 2008 Letter to change Handler's compensation structure."[48]

Handler asserts that collateral estoppel does not bar these claims because "no statement that Vice Chancellor Glasscock made about Handler's compensation rights as an employee was necessary or essential to the judgment in the Standing Opinion that Handler was not a partner at Topco."[49] We agree. Counts Three, Four, and Five concern Handler's rights and terms of compensation as an employee, an issue that was not litigated and decided by a valid and final judgment in the Standing Opinion. Accordingly, we conclude that Counts Three, Four, and Five are not barred by collateral estoppel.

---

that has previously been litigated and decided in a prior action involving that party.'" (quoting *Smith v. Guest*, 16 A.3d 920, 934 (Del. 2011))).

[47] *M.G. Bancorporation, Inc.*, 737 A.2d at 520; *see also Rogers*, 208 A.3d at 346 ("A claim will be collaterally estopped only if the same [factual] issue was presented in both cases, the issue was litigated and decided in the first suit, and the determination was essential to the prior judgment." (quoting *Smith*, 16 A.3d at 934)).

[48] *Collateral Estoppel Opinion*, 2025 WL 1720039, at *8 (concluding that, "the [Standing Opinion] is clear that at the November 8 Meeting, the parties agreed to modify Handler's compensation structure under the 2008 Letter; thereafter, rather than form an oral partnership, the parties operated under the 2008 Letter *as modified* by Handler's new discretionary compensation arrangement[]" (emphasis in original)).

[49] Opening Br. On Appeal of Pl.-Countercl. Def. Below/Appellant at 34 [hereinafter "Opening Br."].

*A.*      *Resolution of the Specific Terms of Handler's Compensation As an Employee Was Not An Issue Essential to the Determination of Whether or Not Handler Was a Partner of Topco*

"Pursuant to the doctrine of collateral estoppel, if a court has decided an issue of fact necessary to its judgment, that decision precludes relitigation of the issue in a suit on a different cause of action involving a party to the first case."[50] "The requirement that an issue be essential to the resulting judgment 'is applied narrowly and only precludes those [issues] vital or crucial to the previous judgment . . . without which the previous judgment would lack support.'"[51] "A determination ranks as necessary or essential only when the final outcome hinges on it."[52] "'[I]f a judgment does not depend on a given determination,' the determination is considered 'merely dicta,' and 'relitigation of [it] is not precluded.'"[53]

Centerview asserts that, under *Rogers*, "an 'obvious causal relationship' between a finding in a prior case and the judgment" is sufficient to meet this requirement even if that

---

[50] *M.G. Bancorporation, Inc.*, 737 A.2d at 520 (quoting *Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995))); *see also Rogers*, 208 A.3d at 352.

[51] *BuzzFeed Media Enters., Inc. v. Anderson*, 2024 WL 2187054, at \*15 (Del. Ch. May 15, 2024) (quoting 50 C.J.S. *Judgments* § 1017 (2023)); *see also Taylor v. State*, 402 A.2d 373, 375 n.2 (Del. 1979) (quoting Restatement of the Law of Judgments § 68(o) (1942)):

> "Facts Not Essential To The Judgment. The Rules stated in this section (collateral estoppel rules) are applicable only where the facts determined are essential to the judgment. Where the [] jury or the court makes findings of fact but the judgment is not dependent upon these findings, they are not conclusive between the parties in a subsequent action based upon a different cause of action."

[52] *BuzzFeed*, 2024 WL 2187054, at \*15 (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)).

[53] *Id.* (quoting *Bobby*, 556 U.S. at 834). The Delaware Supreme Court "follows the traditional definition of 'dictum,' describing it as judicial statements on issues that 'would have no effect on the outcome of [the] case.'" *In re MFW S'holders Litig.*, 67 A.3d 496, 521 (Del. Ch. 2013) (quoting *Brown v. United Water Del., Inc.*, 3 A.3d 272, 276 & n.17 (Del. 2010)), *aff'd sub nom.*, *Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014); *see also In re Fox Corp./Snap Inc.*, 312 A.3d 636, 650 n.75 (Del. 2024).

finding was not outcome determinative.[54]  However, this Court did not create a new test

for collateral estoppel in *Rogers*.[55]  Instead, this Court applied the "essential" requirement

to a "unique factual situation[]" where the defendant's trial ended in a hung jury, but he

pled *nolo contendere* to a resisting arrest charge after the State re-indicted him.[56]

*Rogers* involved a hit-and-run investigation that escalated into an officer-involved

shooting where the State charged Rogers with resisting arrest and several counts of assault.

At the first criminal trial, Rogers filed a motion to suppress evidence resulting from

Corporal Morgan's entrance into the home.  The court denied the motion to suppress,

finding that Rogers's mother had invited Corporal Morgan into the home and that neither

she nor Rogers had revoked that consent.  Although the first trial resulted in a mistrial

because the jury was unable to reach a verdict, Rogers pled *nolo contendere* to the resisting

arrest charge after the State re-indicted him.  In a separate civil action, the Delaware

Superior Court determined that collateral estoppel barred Rogers from bringing federal and

state invasion of privacy claims because "the judge in the criminal trial had found that

Corporal Morgan had permission to be in the home when the altercation ensued."[57]

On appeal, Rogers argued that the plea that ended the second proceeding rendered

any factual issue reached in the earlier suppression hearing nonessential.  We rejected

---

[54] Answering Br. at 32 (quoting *Rogers*, 208 A.3d at 353).

[55] *Rogers*, 208 A.3d at 352 (stating that "[u]nder the doctrine of collateral estoppel, 'if a court has decided an issue of fact necessary to its judgment, that decision precludes relitigation of the issue in a suit on a different cause of action involving a party to the first case[]'" (quoting *Messick*, 655 A.2d at 1211)).

[56] *Id.* at 346, 352–53.

[57] *Rogers*, 208 A.3d at 344.

Rogers's argument and concluded that "the Superior Court's consent determinations in the motion to suppress hearing were essential to the denial of that motion and to Rogers's *nolo contendere* plea in [a] [] common-sense fashion, namely, that there is an obvious causal relationship between the denial of the motion to suppress and the no-contest plea, which renders the determinations on the motion to suppress sufficiently necessary for collateral estoppel to apply."[58] We determined that the consent determinations were essential to (1) the denial of the motion to suppress "[b]ecause [Rogers]'s motion depended on whether Corporal Morgan had consent to enter the residence and the bedroom[]" and (2) the no-contest plea because "had the motion to suppress been granted, the evidence that formed the basis for [Rogers]'s resistance charge would have been excluded."[59]

The "obvious causal connection" analysis in *Rogers* focused on Rogers's contention that the plea that ended the second proceeding rendered the factual issue regarding consent reached in the earlier suppression hearing nonessential. Here, Handler argues that "no statement that Vice Chancellor Glasscock made about Handler's compensation rights as an employee was necessary or essential to the judgment in the Standing Opinion that Handler

---

[58] *Id.* at 353. The Court explained that "[a]lthough none of the authority cited by the parties directly answer[ed] the question, *McDowell v. Delaware State Police*, relied upon by Corporal Morgan, offers some support for his position[]" that the consent determinations were essential because "had the trial judge granted the motion to suppress, there would have been no evidence to support [Rogers]'s criminal charges." *Id.* at 352–53 (citing *McDowell v. Delaware State Police*, 1999 WL 151873 (D. Del. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000)).

[59] *Id.* at 353–54.

was not a partner at Topco[]" because "none of them address the standing question of whether an enforceable contract existed to support Handler's partnership claim."[60]

The Standing Opinion determined that Handler was not a partner of Topco because Handler failed to meet his burden to show that the November 8th Meeting resulted in an oral agreement to create a limited partnership in Topco.[61] The court determined that "the objective contemporaneous evidence demonstrate[d] that Handler and Centerview did not reach an agreement on the essential terms to create a partnership in Topco at the November 8th Meeting."[62] In reaching this conclusion, the court noted that "several material terms were still up for discussion throughout the parties' years-long exchange of draft LPAs following the November 8th Meeting[]" and noted that "[t]he parties also did not perform in accordance with the terms identified in the purported oral partnership agreement."[63] The determination that Handler was not a partner did not depend on a conclusion that the parties had replaced Handler's previous terms of employment. Therefore, any finding that the 2008 Letter had been replaced by a discretionary compensation arrangement was not essential to the Standing Opinion's judgment.

---

[60] Opening Br. at 34, 37.

[61] *Standing Opinion*, 2024 WL 1775269, at *13.

[62] *Id.* at *10.

[63] *Id.*

Counts Three, Four, and Five are premised on the allegation that the 2008 Letter continued to govern Handler's compensation following the November 8th Meeting. In asserting these claims, Handler emphasizes that the parties modified the 2008 Letter pursuant to the Addendum which explicitly stated that "[i]n all other respects, the [2008] Letter Agreement shall remain in full force and effect."[64] Conversely, Centerview argues that Handler cannot assert rights under the 2008 Letter because "the compensation terms of the 2008 Letter were replaced at the November 8 Meeting with a new discretionary structure."[65]

The Standing Opinion stated that the 2008 Letter "remained operative[]" after the November 8th Meeting, but it also stated that Handler's rights after leaving the company would be determined in "[a] companion substantive case[.]"[66] The "narrow, and rather

---

[64] Opening Br. at 28 (quoting A68 (Addendum)).

[65] Answering Br. at 24. The Standing Opinion noted that, in the Books and Records Action, it was "Centerview's position that the parties agreed to a modification of the 2008 agreement which addressed Handler and St. Jean's compensation as employees, not as partners." *Standing Opinion*, 2024 WL 1775269, at *4.

[66] *Id.* at *1 n.1, *5 (stating that "the parties met again to discuss a partnership agreement in March 2013, but at the meeting's conclusion, the 2008 Letter, *i.e.*, the employment agreement, remained operative, as evidenced in a memorandum detailing the meeting[]"). Various decisions suggest that to abrogate or modify a prior contract under Delaware law, "it is necessary that the minds of the parties to the original contract should meet by offer and acceptance upon the terms of the new agreement." *Josloff v. Falbourn*, 125 A. 349, 349 (Del. 1924) ("It is well settled, that one of the parties to a contract cannot modify such contract or terminate it lawfully unless the other party assents thereto."). "While an executory written agreement may be rescinded by a subsequent unwritten one, it is well settled that nothing short of positive and convincing proof will suffice to establish the fact of such rescission against a party who denies it, and seeks to sustain it." *Id*. at 35*0*; *see also Tunney v. Hilliard*, 2008 WL 3975620, at *5 (Del. Ch. Aug. 20, 2008) ("[O]ral modifications of written contracts are permissible under Delaware law," but "a party seeking to

20

unusual, subject of [the Standing Opinion] [wa]s whether Plaintiff, David Handler, was an employee of a Delaware L.P., or was in fact a partner in the entity that managed that L.P."[67] The most reasonable reading of the Standing Opinion is that it did not finally determine exactly what Handler's "vested rights" were.[68]  Rather, the court merely concluded that "when Handler left his employment in 2022, he was an employee with certain vested rights in Centerview (to be determined in the Plenary Action) but was not a Topco partner entitled to invoke 6 *Del. C.* § 17-305."[69]  Thus, the terms and vested rights regarding Handler's

---

prove an oral modification bears a heightened evidentiary burden and must prove the intended change to the written agreement with sufficient 'specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document.'" (quoting *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1230 (Del. Ch. 2000))), *aff'd*, 970 A.2d 257 (Del. 2009).

[67] *Standing Opinion*, 2024 WL 1775269, at *1.  Vice Chancellor Glasscock previously stayed this action "and bifurcated the Books and Records Action to first determine the validity of Handler's assertion that he is a partner of Topco[]."  *Id.* at *7.

[68] *Id.* at *13.  The statutorily prescribed narrow scope of summary books and records actions further supports our conclusion.  *See* 6 *Del. C.* § 17-305(e) ("The Court of Chancery may summarily order the general partner to permit the limited partner to obtain the information described in subsection (a) of this section[].").  In *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, the Court of Chancery observed:

> The discrete inquiry into proper demand and proper reason results in a narrow and focused proceeding.  To allow the limited partner to add complex claims of fiduciary or contractual breach of duty would expand the proceeding into a plenary trial and overwhelm the purpose of the special proceeding granted under § 17–305.  Thus, as a general rule, this Court will not entertain outside claims or collateral issues within a § 17–305 hearing, but will hear only those matters that pertain to the limited partner's demand to inspect the books.

714 A.2d 96, 104 (Del. Ch. 1998).

[69] *Standing Opinion*, 2024 WL 1775269, at *13.  Centerview contends that Vice Chancellor Glasscock's use of the term "vested rights" referred to terminal value interests and not compensation.  *See* Oral Argument at 30:49–33:44 (Jan. 7, 2026), https://courts.delaware.gov/supreme/oralarguments/.  However, we agree with Handler's contention that the meaning of "vested rights" as used in the Standing Opinion is unclear.  *See id.* at 41:21–42:04.  That is not a criticism as the Vice Chancellor contemplated addressing the matter in the plenary action.

compensation as an employee have not been litigated and determined by a valid and final judgment.

Accordingly, we hold that Counts Three, Four, and Five are not barred by the doctrine of collateral estoppel.

## V. CONCLUSION

For the reasons discussed above, we **REVERSE** the judgment of the Court of Chancery and remand the matter to the Court of Chancery.

22